6. It is also decided in *Driskill* v. *The State, supra,* that the death penalty is not in conflict with the 18th section of the first article of our constitution. If any question can be raised before the judiciary upon the discretion of the legislature under that section, we concur that it has not been abused in leaving the question of assessing that penalty to the jury. There are cases beyond the hope of reformation—criminals whose necks have become so hardened "that they should suddenly be cut off, and that without remedy."

*Per Curiam.*—The judgment is affirmed with costs.

*W. F. Lane* and *E. H. Brackett,* for the appellant.

*R. C. Gregory* and *H. W. Chase,* for the state.

---

### DRISKILL *v.* THE STATE.

The amendment of an affidavit in support of a continuance is not allowed after the motion to continue has been decided.

The refusal of the Circuit Court to grant a continuance, though the motion is addressed to the discretion of the Court, may be revised by the Supreme

Court; but unless the refusal was manifestly improper, the ruling will be sustained.

Indictment, under the R. S. 1852, for murder. While the jury were being impanneled, *A.* was called as a juror, and being examined under oath touching his qualifications, said, "that he was, and for years had been, opposed to punishing a man with death, and could not find a verdict that a man should suffer death; but that where the law and evidence warranted a verdict of guilty, he could find that the accused be imprisoned for life." *Held,* that the juror was incompetent.

The statute authorizing the punishment of death, is not in conflict with section 18 of the bill of rights.

Section 18 of the bill of rights applies to the penal laws as a system only.

The jury are the exclusive judges of what is proved by the evidence, and the Court has no authority to state what has been proved; yet it is proper for the Court to sum up the evidence before the jury.

The Court is only required by s. 113, p. 376, 2 R. S. 1852, to state to the jury that they are the exclusive judges of the facts, when it has undertaken to present them. Where the Court has merely pointed to the evidence proper for the jury to consider, that precise statement is not necessary.

The Court, on the trial of a criminal cause, instructed the jury that it was proper for them to respect and take for law what the Court had declared to be such. *Held,* that the instruction was proper.

The act of 1855 for the organization of the twelfth judicial circuit, so far as relates to the creating of that circuit, is constitutional; and the appointment by the governor of the honorable *John Pettit* as judge thereof, (the office having been newly created, and there being no incumbent,) was valid.

APPEAL from the *Tippecanoe* Circuit Court.

DAVISON, J.—*Driskill,* the appellant, with *Rice, Longley, Clark, Privot* and *Chapman,* was, at the *April* term, 1855, indicted in the *Tippecanoe* Circuit Court, for the murder of one *Cephas Fahrenbaugh.* Against *Driskill,* there was a verdict that he was guilty of murder in the first degree, and that he suffer death; upon which the Court rendered judgment and passed sentence.

*Driskill,* at the proper time, moved for a delay of the trial for a reasonable time, on account of the absence of a witness. In support of the motion, he filed his affidavit, wherein it is alleged that "he can not safely go into the trial of said cause, without the testimony of one *James Rorick,* a material witness for him, *Driskill,* in his defence; that he expects to prove by said witness that on the night of the alleged murder, from the hour of nine o'clock, he was in company with the above witness and two other persons, whose names are unknown to the affiant, on

Nov. Term, 1855.

DRISKILL *v.* THE STATE.

*Monday, December 24.*

HARVARD LAW SCHOOL LIBRARY

board a canal-boat lying at the town of *Lafayette*, playing at cards; and that said witness, the two other persons, and affiant continued together on said boat, playing at cards, until eleven o'clock of that night; which facts he says are true. Affiant expects to prove by other competent testimony, that from between the hours of eleven and twelve of said night, he was at home, at his father's house in *Lafayette*, in bed; that the place at which said murder is alleged to have been committed, is at least four miles distant from his residence; and affiant is informed and believes that, on the part of the prosecution, it will be shown that the alleged murder was committed at or about the hour of twelve of said night. He is, therefore, led to believe that the testimony of said witness will be material. That affiant informed his counsel of the facts he expects to prove by the witness, at the first interview he had with them after they had consented to appear in his defence; that said witness is a boatman by occupation, engaged on the *Wabash* and *Erie* canal; that he is informed and believes that witness left *Lafayette* a short time after the night in question, in his regular avocation; that affiant has been unable to learn at what point said witness now is, so as to send a subpœna for him; that he has reason to believe and does believe that the witness can be found, so as to secure his attendance in a reasonable time, if the trial of the cause is delayed for that purpose; that affiant knows of no witness by whom he can prove the same facts that he expects said witness's testimony to prove; that this application is not for delay, but for justice."

*Driskill*, it appears, was arraigned, and counsel assigned him, on the 12th of *May*; his affidavit was sworn to on the 31st of that month; and the motion for delay was made on the 6th of *June*.

The Court overruled the motion. After this, and before *Driskill* was put upon his trial, he moved for leave to amend the above affidavit, alleging that by reason of a clerical omission of the attorney who drafted it, the residence of said witness was not therein shown, and that he desired to amend and re-swear to said affidavit, so as to

show that the witness left the county of *Tippecanoe* before the present indictment was found; that he had not returned to said county; and that said witness resided in the state of *Ohio*.

We are aware of no rule of practice authorizing the Court to allow a party to amend an affidavit, filed in support of a motion for a continuance, after such motion has been decided.

But suppose the affidavit be considered amended in accordance with the motion to that effect, does it then show that *Rorick's* testimony would have been material? It is alleged that the murder occurred on the night of the third of *May*; that the witness would testify that from nine to eleven o'clock of that night, the defendant was on board a canal-boat lying at *Lafayette*; but the distance between the boat and *Fahrenbaugh's*, the place of the murder, is not shown. He says his residence was at least four miles from *Fahrenbaugh's*; but at what distance was the boat from that point? For aught that appears, it may have lain sufficiently near the place of the murder to have allowed him sufficient time to have reached that place before the hour of twelve. The defendant left the boat at eleven o'clock. The witness did not accompany him. Did he go directly home? The affidavit does not answer this question. The witness could have testified nothing as to the defendant's whereabouts after he left the boat. The mere fact that he did leave at the time stated, is not material, because it does not forbid the conclusion that the defendant was at the place of the murder when it was committed.

But the affidavit states that the defendant expected to prove by other witnesses that from between the hours of eleven and twelve o'clock of said night, he was at home, at his father's house, in *Lafayette*, in bed. This evidence might have been material. It tended to prove an *alibi*. But such evidence could have derived no additional weight from the absent witness, because it is not shown that he knew where the defendant went after he left the boat, or whether he was or not at his father's house on the night

of the murder. In *Detro* v. *The State*, it was held that "the motion for a continuance, based upon the affidavit of the party, is addressed to the sound discretion of the Court, and the granting it must depend to a great extent on the peculiar circumstances of each case." 4 Ind. 200. True, where the Court refuses a continuance, its ruling is subject to revision; but unless an improper exercise of such discretion is manifest, the action of the Court will be sustained. These principles are well settled, and their application to the case made by the affidavit at once shows that the ruling of the Circuit Court must be held unobjectionable.

Another error is assigned. While the jury was being impanneled, one *Frederick Sheets* was called as a juror. Upon his examination under oath touching his qualifications, he stated "that he was and for years had been opposed to punishing a man with death; that he could not find a verdict that a man suffer death; but the juror, in answer to a question propounded by the defendant, said that where the law and evidence warranted a verdict of guilty, he could find that the accused be imprisoned for life." The Court adjudged the juror incompetent, and discharged him from the panel. It is enacted that "any person convicted of murder in the first degree, may, instead of being sentenced to death, in the discretion of the jury, be imprisoned in the state prison during life." 2 R. S., p. 396. We are unable to perceive how a juror, indulging the opinion indicated by *Sheets* in his examination, could exercise the discretionary power with which he is invested, and which it is essential he should exercise to carry out the spirit and intention of the law. 2 Ind. R. 329, 331. Moreover, there is an express enactment on this subject, which provides that "if the offence charged be punishable with death, any person entertaining such conscientious opinions as would preclude his finding the defendant guilty, shall not serve as a juror." 2 R. S., p. 372.

In connection with this point, it is insisted that the law authorizing the death penalty is in conflict with section eighteen of the bill of rights, which requires the penal code

to be founded on principles of reformation, and not of vindictive justice. The punishment of death for murder in the first degree, is not, in our opinion, vindictive, but is even-handed justice. There is, indeed, nothing vindictive in our penal laws. The main object of all punishment is the protection of society. With that end in view, the legislature have, in a given case, left it within the discretion of the jury to say when the death penalty shall be inflicted. It is true, one branch of that discretion does not contemplate reform; still, it is the only instance in the law in which the purpose of reformation is not prominent, and it can not, it seems to us, be allowed to give character to the principles upon which the entire code is founded. The eighteenth section of the bill of rights, when properly construed, requires the penal laws to be so framed as to protect society, and at the same time, as a system, to inculcate the principle of reform. In this view, the present code is, no doubt, founded on the principles of reformation, within the spirit and intent of the constitution. The law which allows the death penalty to be inflicted, must, therefore, be held valid.

An objection is raised to the mode in which the Court in its charge summed up the evidence. The jury were told that "in determining the identity of the defendant, or whether he participated in the murder, they should take into consideration the positive evidence of the two *Fahrenbaughs* that he was at the murder, and the circumstantial evidence that he told *Andrew Wolf* that he was going to rob that house, and wishing him to join in it," &c. This, it is said, is an assumption of facts. The Court is not authorized to tell the jury that certain facts have been proved; nor has that been done in the present case. Though the jury are the exclusive judges of what is proved by the evidence, still it may be summed up by the Court; and it is not obvious that that duty could have been discharged otherwise than in the form of the above instruction. The Court assumed no fact as proved. The jury were simply pointed to the evidence, positive and circumstantial, proper to be considered in coming to a con-

clusion as to the identity of the defendant, or whether he participated in the murder. There is, in this branch of the case, no error.

Another point is made on the instructions. It was charged that "in this and all criminal cases, the jury has a right to judge of the law and the facts; but it is the duty of the Court to instruct them as to what the law is, and it is proper for them to respect and take for law what the Court declares it to be."

We have a statute which provides that the judge, "in charging the jury, must state to them all matters of law which are necessary for their information in giving their verdict;" and that "if he presents the facts of the case, he must inform the jury that they are the exclusive judges of all questions of fact." 2 R. S., p. 376. It is insisted that the judge, having summed up the evidence as indicated in his charge, should, in the language of the statute, have told the jury that "they were the exclusive judges," &c. This construction is not strictly correct. It is only where the judge presents "the facts of the case," that he is required to tell the jury that "they are the exclusive judges of all questions of fact." In this case, we have seen that the judge presented no facts to the jury. He merely pointed to the evidence proper for them to consider. It follows, that in giving the charge, it was not requisite that he should adopt the precise language of the statute. The judge did, however, instruct the jury that "in this, and in all criminal cases, they had the right to judge of the law and the facts." And it may well be doubted whether the language thus used does not confer the same duty upon the jury as that used in the statute.

But it is contended that the instruction is erroneous, because it advises the jury that "it is proper for them to respect and take for law what the Court has declared it to be." The point involved in this position has been decided. *Carter* v. *The State*, 2 Ind. R. 617, was an indictment for murder. In that case the Court instructed the jury that "they were the judges of the law and the facts; but it was their duty to believe the law as laid down by

the Court." *Held*, that the instruction was right. This case, in our opinion, is a correct exposition of the law, and is decisive of the question under consideration.

In the argument of the case, two additional questions have been raised for our consideration. The first involves the power of the legislature, under the constitution, to create the twelfth judicial circuit, of which the county wherein this cause was tried constitutes a part; and the second involves the validity of the appointment by the governor of *John Pettit*, as judge of that circuit. These questions have been disposed of at the present term. The act of the legislature organizing the twelfth circuit has been held constitutional by this Court, and the appointment of the judge valid. See *Stocking* v. *The State*, *ante*, p. 326.

We have looked into the evidence in this cause; examined it carefully; and are decidedly of opinion that it fully sustains the verdict.

*Per Curiam.*—The judgment is affirmed with costs.

*E. H. Brackett*, *S. A. Huff* and *E. A. Greenlee*, for the appellant.

*R. C. Gregory* and *H. W. Chase*, for the state.