Benjamin RITCHIE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–0011–DP–638.

Supreme Court of Indiana.

May 25, 2004.

Rehearing Denied Aug. 26, 2004.

Mark Small, Kevin McShane, Marion County Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Stephen R. Creason, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Benjamin Ritchie was convicted of killing Beech Grove police officer William Toney. Because the victim was a law enforcement officer, the prosecutor sought the death penalty. The jury recommended death and the trial court imposed that sentence. We affirm the conviction and sentence.

**Factual and Procedural Background**

On September 29, 2000, around 7:00 p.m., Ritchie and two others stole a white Chevrolet Astro van from a gas station in Beech Grove. The theft was reported and police were dispatched to the scene where Beech Grove police officer Matt Hickey filed a stolen vehicle report. Approximately two hours later, Hickey was en route to a traffic accident scene and recognized the stolen van as Ritchie and one of his accomplices drove by. After confirming by radio that the van bore the license plate of the stolen vehicle, Hickey pursued, joined by officers Robert Mercuri and William Toney. After a short chase, the van pulled into the yard of a residence where Ritchie and his companion jumped out and ran in opposite directions. Officer Toney pursued Ritchie on foot, and ultimately Ritchie turned and fired four shots, one of which struck Toney in the chest. Toney died at the scene. Ritchie·was convicted of murder and the jury recommended the death penalty, which the trial court imposed. This direct appeal followed.

## I. Indiana Constitution Article I, Section 18

■ Ritchie argues that Indiana's Death Penalty Statute violates Article I, Section 18 of the Indiana Constitution, which provides that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice." Ritchie concedes that this claim was rejected shortly after the 1851 Constitution was adopted. In *Driskill v. State*, 7 Ind. 338, 343 (1855), and *Rice v. State*, 7 Ind. 332, 338 (1855), this Court held that Section 18 applies to the Penal Code as a whole, but does not require that every provision of the Penal Code be oriented toward reform. Accordingly, this Court early held that Section 18 is not violated by the death penalty. Ritchie points out that these seminal cases neither discussed the legislative history of Section 18 nor considered the prevailing legal framework at the time Section 18 was adopted. Essentially, Ritchie argues that this Court should have found that the focus of Indiana's Penal Code is reform, and that the death penalty is grounded in the inconsistent goal of vindictive retribution and is therefore unconstitutional. We do not find this contention persuasive. *Driskill* and *Rice* were decided immediately following the adoption of the 1851 Constitution. There was no need for this Court, in deciding those cases, to review the mindset of the framers of our state constitution. The Indiana Supreme Court of 1855 was composed of judges who were present at the creation. To the extent Ritchie relies on the views of the framers, contemporaneous court decisions are evidence of the attitude of the times.

In recent times, this Court has consistently adhered to the view that the death penalty does not violate Section 18. *See Saylor v. State*, 686 N.E.2d 80, 88 (Ind. 1997); *Harrison v. State*, 644 N.E.2d 1243, 1258 (Ind.1995); *Fleenor v. State*, 514

N.E.2d 80, 90 (Ind.1987). Ritchie advances a number of criticisms of the wisdom, fairness, humanity, or efficacy of the death penalty. These arguments have been successful in the legislatures of several states and many foreign countries. They are properly directed to the General Assembly, which is free to abolish the death penalty at any time. Any change in the settled doctrine that the penalty is not inherently unconstitutional should be by constitutional amendment.

## II. Death by Lethal Injection as Cruel and Unusual Punishment

■ Indiana now administers the death penalty by lethal injection. Ritchie contends that this method of execution inflicts unnecessary pain and therefore constitutes cruel and unusual punishment for purposes of the Eighth Amendment to the United States Constitution. We recently rejected this claim in *Moore v. State,* 771 N.E.2d 46 (Ind.2002). In *Moore,* the defendant contended that lethal injection was cruel and unusual as applied to him because of his obesity and the resulting inability to locate a suitable vein. *Id.* at 55 n. 3. We noted that Moore raised possible difficulties with the lethal injection process without substantiating the probability that any would occur in Moore's case. *Id.* We held that Moore had not established that lethal injection constituted cruel and unusual punishment in that case. *Id.* at 56. In holding that injection as applied in *Moore* did not violate the Eighth Amendment, we necessarily held that injection is not per se cruel and unusual.

In *Moore,* we observed that the Eighth Amendment requires that an execution "be performed in a manner that avoids unnecessary or wanton infliction of pain," but concluded that lethal injection does not constitute wanton infliction of pain. *Id.* at 55. Because Ritchie points to no circumstances creating an unusual risk in his case, his contention amounts to a request to reverse that holding. Ritchie cites two instances where lethal injection did inflict excessive pain. In the first of these, the defendant's veins were abnormally small and a physician was required to perform a "cut down" to locate a proper vein. The execution required one hour and seventeen minutes, and sixteen minutes were spent locating a vein before a physician's incision exposed one. The defendant was conscious the entire time. The second instance involved an execution that took one hour to complete, again because of difficulty in inserting the needle into the vein. In that case the problem was attributed to the defendant's size. These two isolated cases do not establish that lethal injection is an inherently cruel or unusual method. To be sure, these two examples demonstrate that problems may occur in unusual circumstances, but that possibility does not rise to a systematic or inherent flaw in the lethal injection process. *See Hill v. Lockhart,* 791 F.Supp. 1388, 1394 (E.D.Ark. 1992).

Recent decisions of the United States Supreme Court confirm this view. The reach of the Eighth Amendment is an issue of federal law. The Supreme Court recently held that a challenge to the "cut down" procedure may be brought under 42 U.S.C. § 1983. *Nelson v. Campbell,* —— U.S. ——, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). That case involves a defendant who has collapsed veins requiring a potentially painful surgical procedure to perform an injection. Two recent applications for stays of execution, *Zimmerman v. Johnson,* —— U.S. ——, 124 S.Ct. 979, 157 L.Ed.2d 792 (2003), and *Vickers v. Dretke,* —— U.S. ——, 124 S.Ct. 956, 157 L.Ed.2d 768 (2003), involved more general challenges to the lethal injection process. Zimmerman was originally granted a stay of execution by the United States Supreme

Court, but the stay was lifted on December 15, 2003, and Vickers's application for stay was denied by the Court on December 9, 2003. Both have been executed. Ritchie's claim, like those in *Vickers* and *Zimmerman,* involves only a general claim that the lethal injection process violates the Eighth Amendment. Thus, the Supreme Court has very recently denied review of these general challenges to lethal injection in proceedings where execution was imminent. We conclude that the Court sees no merit in the contention that lethal injection is a per se violation of the Eighth Amendment.

### III. The Death Penalty as Inherently Unconstitutional

■ Ritchie argues that the death penalty violates the Eighth Amendment and Article I, Section 16 of the Indiana Constitution because it is not a deterrent to crime. The constitutionality of the death penalty under the federal constitution was resolved by the Supreme Court of the United States in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Ritchie's contention under the State Constitution assumes that deterrence is the only legitimate goal of a penal law and also that the death penalty serves no deterrent purpose. Even if the former is the case, in *Gregg,* the Supreme Court observed that the death penalty serves as a valid deterrent in some situations and not in others. 428 U.S. at 186–87, 96 S.Ct. 2909. Ritchie's contention under the state constitution also seeks review of settled precedent. We adhere to the view this Court expressed in *Evans v. State,* 563 N.E.2d 1251, 1264 (Ind.1990): The effec-

tiveness of the death penalty as a deterrent is debatable; resolution of that issue is a matter for the legislature.

### IV. Indiana Constitution Article I, Section 12

■ Ritchie contends that the Indiana Death Penalty Statute offends Article I, Section 12 of the Indiana Constitution and the Due Process Clause of the federal constitution. Article I, Section 12 requires that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ritchie points out that an executed criminal cannot benefit from later found exculpatory evidence and therefore cannot receive "complete" justice. Ritchie provides no authority to support his contention that the death penalty violates Section 12 because a person cannot "completely" obtain justice after execution. We do not find it persuasive. "Complete", as used in Section 12 does not mean "perfect." Complete redress for an unjust or erroneous conviction is often unavailable, whether the wrongly convicted person is alive or dead. Despite our best efforts, neither the United States, nor any other society has achieved perfection in its criminal justice system, and the constitution does not require it.

### V. *Ex Post Facto*

■ Ritchie killed Officer Toney on September 29, 2000. He was convicted on August 10, 2002 and sentenced on October 15, 2002. An amendment to the Death Penalty Statute became effective on July 1, 2002.[1] Ritchie argues that the 2002

---

1. Subsection (e) of Indiana's Death Penalty Statute was amended to provide that for defendants "sentenced after June 30, 2002", "if the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Act of Mar. 26, 2002, Pub.L.

No. 117–2002, 2002–2 Ind. Acts 1734. This replaced the following language: "The court shall make the final determination of the sentence, after considering the jury's recommendation, and the sentence shall be based on the same standards that the jury was required to

amendment to the Death Penalty Statute constitutes an *ex post facto* law because it effected a substantive change from the previous statute. Under the old statute, the jury's weighing of aggravating factors and mitigating factors and the ensuing recommendation was not binding on the trial judge. Under the new statute, after receiving the jury's recommendation as to the death penalty, the judge is to sentence "accordingly." As of this writing, the United States Supreme Court has granted certiorari in *Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 833, 157 L.Ed.2d 692 (2003) to address the retroactive application of *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *Summerlin,* the Ninth Circuit held that Arizona's change in its death penalty statute violated the *ex post facto* clause of the federal constitution by substituting the jury for the judge as the agent required to "find" the statutory aggravators. *Summerlin v. Stewart,* 341 F.3d 1082, 1108 (9th Cir.2003) (*en banc*), *cert. granted sub nom, Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 833, 157 L.Ed.2d 692. Despite this holding, we believe the Indiana amendment neither changes the elements of the crime nor enlarges its punishment. It simply mandates that once the jury makes a recommendation, pursuant to its findings, the judge is to sentence "accordingly." As such, in our view the changes effected by the 2002 Indiana legislation are procedural in nature for purposes of the *ex post facto* doctrine, and may be applied to crimes committed before the effective date.

█ As the Supreme Court held in *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), a substantive change in a penal statute constitutes an *ex post facto* law, but a procedural change is not *ex post facto.* The statute in *Dobbert*

"established a bifurcated system in the wake of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and thus 'simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.' " *Brice v. State,* 815 A.2d 314, 321 (Del.2003) (citations omitted). Similarly, a statute that enlarged the class of people who were competent to testify in criminal cases was not *ex post facto* because it did not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt. *Hopt v. Utah,* 110 U.S. 574, 589–90, 4 S.Ct. 202, 28 L.Ed. 262 (1884). See also *Collins v. Youngblood,* 497 U.S. 37, 51, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), where the Supreme Court held that a statute that allowed an appellate court to reform an improper verdict that assessed a punishment unauthorized by law was not an *ex post facto* law because it did not "(1) punish as a crime an act previously committed which was innocent when done; (2) make more burdensome the punishment for a crime, after its commission; nor (3) deprive one charged with a crime of any defense available according to the law at the time the act was committed." In our view, the amendments to the Indiana Death Penalty Statute did none of these and is not invalid *ex post facto* legislation.

## VI. The Weighing of Aggravating and Mitigating Circumstances

Under the current version of the Indiana Death Penalty Statute, before the jury can recommend the death penalty, it must find that "(1) the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; and (2) any

consider. The court is not bound by the

jury's recommendation." *Id.*

mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." Ind.Code § 35-50-2-9($l$) (2003). Thus, the Indiana statute requires the jury to find the existence of one or more of the statutory aggravating circumstances beyond a reasonable doubt. Unlike its counterparts in some states, it provides no guidance as to what standard governs the weighing process.[2]

■ Ritchie argues that the trial court improperly instructed the jury on the weighing process contemplated by the second part of this subsection. Specifically, he contends that the trial court should have instructed the jury that it must apply a reasonable doubt standard in finding that the State proved that the aggravating circumstances outweigh the mitigating factors. For the reasons explained below, we conclude that this process is not subject to a reasonable doubt standard. The Supreme Court has now made clear that statutory aggravators in Indiana's Death Penalty law are the functional equivalent of elements of a crime, and must be found by a jury beyond a reasonable doubt. *Ring v. Arizona*, 536 U.S. 584, 605, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *Ring* applied to death penalty jurisprudence the doctrine first developed in *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that the Sixth Amendment right to jury trial requires that the jury make any finding that "exposes the defendant to a greater punishment." We believe the pivotal

inquiry under *Ring* and *Apprendi* is whether exposure to punishment is increased, not whether the punishment should or should not be imposed in a given case. As *Ring* explained: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring*, 536 U.S. at 602, 122 S.Ct. 2428 (citations omitted).

■ Indiana law, Indiana Code section 35-50-2-9, authorizes the death penalty if one or more of the "aggravating circumstances" listed in subsection 9(b) is found. Although our statute refers to the items listed in subsection 9(b) as "aggravating circumstances," that term is borrowed from sentencing statutes. As used in the death penalty statute, it refers to the facts that must be found before a defendant may be subject to the death penalty. We think it is more useful to describe these factual determinations as eligibility factors. They are the first step required of the trier of fact. In this case that issue is rather simply resolved. Officer Toney, the victim of the murder, was a law enforcement officer and there is no doubt that the defendant knew that at the time he fired the fatal shot. Pursuant to section 9(e), it is this fact, and this fact alone, that, if proven beyond a reasonable doubt, enabled the jury to proceed to the second step of weighing any mitigating circumstances against the aggravating factors.

**2.** Some states provide in their statutes that a reasonable doubt standard be imposed, others impose a preponderance of the evidence standard, and some, like Indiana, are silent. *Compare* Ark.Code Ann. § 5-4-603 (Michie 1987); Conn. Gen.Stat. § 53a-46a (2003) (reasonable doubt standard not directly in statute, but interpreted as such in *Connecticut v. Rizzo*, 266 Conn. 171, 833 A.2d 363, 410-11 (2003)); N.J. Stat. Ann. § 2C:11-3(c)(3)

(2004); N.Y.Crim. Proc. Law § 400.27(11)(a) (McKinney 2004); Ohio Rev.Code Ann. § 2929.03(D)(1) (West 2004); Tenn.Code Ann. § 39-13-204(g)(1)(B) (2003); Utah Code Ann. § 76-3-207(5)(b) (2004) (reasonable doubt), *with* Del.Code Ann. tit. 11 § 4209(d)(1) (2004); Md.Code Ann.Crim. § 3-203(i)(1) (2003); Mo.Code § 565.030.4 (West 2004) (preponderance of the evidence).

■ Neither federal constitutional doctrine under *Apprendi* and *Ring* nor Indiana state jurisprudence leads to the requirement that weighing be done under a reasonable doubt standard. In *Bivins v. State*, 642 N.E.2d 928, 946 (Ind.1994), we concluded, as a matter of state law, that "[t]he determination of the weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt but is a balancing process." (citations omitted).[3] *Apprendi* and its progeny do not change this conclusion. At its core, Ritchie's contention is that the outcome of the weighing process constitutes an eligibility factor for imposition of the death penalty. If that were true, the Sixth Amendment under *Apprendi* and *Ring* would require that it be subject to a reasonable doubt standard. But we do not agree with that premise. Rather, the federal constitution requires that eligibility for the death penalty be determined by the jury beyond a reasonable doubt, but it does not require that the decision whether to impose death be made by the jury, and it does not require the weighing, whether by judge or jury, to be under a reasonable doubt standard.

Other states with similar sentencing schemes have reached the same conclusion. Before the 2002 amendment to the Indiana Death Penalty Statute, the jury made a recommendation but the judge was the ultimate weigher, just as in non death penalty sentencing. The weighing process determined whether the death penalty was to be applied, but eligibility for the death penalty was complete upon the finding of an eligibility factor. If, as Ritchie claims, weighing is required to be performed by the jury under a reasonable doubt standard, the pre–2000 Indiana scheme, and the current statute in Delaware, would violate the Sixth Amendment. We conclude that neither is the case.

The Supreme Court of Delaware in *Brice v. State*, 815 A.2d 314 (Del.2003), addressed the post-*Ring* constitutionality of Delaware's death penalty statute. That state's statute assigns to the sentencing judge the sole responsibility for determining whether to impose the death penalty after weighing aggravating and mitigating factors. In the view of the Supreme Court of Delaware, this approach remains constitutional after *Ring. Ring* does not apply to the weighing phase because weighing does not increase the maximum punishment. Rather it resolved the punishment to be administered within the range fixed by the fact finding. It is designed to "ensure that the punishment imposed is appropriate and proportional." *Id.* at 322.

■ The analysis of the California Supreme Court is consistent with this view. Under the California statute, if the jury finds a "special circumstance" in the guilt phase, a penalty phase determines whether to impose death. *People v. Prieto*, 30 Cal.4th 226, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (2003), addressed the claim that an instruction of presumption of innocence must be given in the penalty phase. The California Supreme Court rejected this claim and observed that *Ring* and *Apprendi* are satisfied by the California statutory scheme:

> element of an offense; instead it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum." *Ex Parte Waldrop v. Alabama*, 859 So.2d 1181, 1189 (Ala.2002) (citations omitted).

3. The Alabama Supreme Court took a similar approach, stating "Contrary to [Defendant]'s argument, the weighing process is not a factual determination. In fact, the relative 'weight' of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof.... Thus the weighing process is not a factual determination or an

Under the California death penalty scheme, once the defendant has been convicted of first degree murder and one or more special circumstances has been found true beyond a reasonable doubt, death *is* no more than the prescribed statutory maximum for the offense; the only alternative is life imprisonment without the possibility of parole.

*Id.* at 1147 (emphasis in original) (citations omitted). In explaining this conclusion, the California Supreme Court cited the U.S. Supreme Court's holding in *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), that under the California framework, "the jury [in the penalty phase] merely weight the factors enumerated in section 190.3 and determines 'whether a defendant eligible for the death penalty should in fact receive that sentence.'" *Id.* We agree and think the same reasoning applies to the Indiana statute.

Similarly, the Nebraska Supreme Court held that *Ring* affects "only the narrow issue of whether there is a Sixth Amendment right to have a jury determine the existence of any aggravating circumstance upon which a capital sentence is based." *Nebraska v. Gales,* 265 Neb. 598, 658 N.W.2d 604, 623 (2003). Under Nebraska's post-*Ring* death penalty statute, the jury is not to determine mitigating circumstances or balance aggravators and mitigators. The Court contrasted the eligibility determination which the jury makes with the death selection process which Nebraska vests in the judge:

It is the determination of "death eligibility" which 'exposes the defendant to greater punishment, and such exposure triggers the Sixth Amendment right to jury determination as delineated in *Apprendi* and *Ring.* In contrast, the determination of mitigating circumstances, the balancing of aggravating circum-

stances against mitigating circumstances, and proportionality review are part of the 'selection decision' in capital sentencing, which, under the current and prior statutes, occurs only after eligibility has been determined. These determinations cannot increase the potential punishment to which a defendant is exposed as a consequence of the eligibility determination. Accordingly, we do not read either *Apprendi* or *Ring* to require that the determination of mitigating circumstances, the balancing function, or proportionality review be undertaken by a jury.

*Id.* at 627–28 (citations omitted).

The Maryland Supreme Court reached the same conclusion. Maryland's death penalty statute allows imposition of a death sentence if the sentencing authority determines that aggravating circumstances outweigh any mitigating circumstances by a preponderance of the evidence. *Oken v. State,* 378 Md. 179, 835 A.2d 1105, 1147 (2003). In holding the preponderance of the evidence standard constitutional, the Court stated:

As is readily apparent from the opinion of the Court, *Ring* only addresses the eligibility phase of the sentencing process. Those aggravating factors which narrow the class of death-eligible defendants for Eighth Amendment purposes must be found by a proper sentencing authority beyond a reasonable doubt in order to comply with the requirements of the Sixth Amendment. Contrary to the present assertions of Oken, *Ring* holds no implications for the selection phase of Maryland's sentencing process.

*Id.*

We note the contrary view of the Nevada Supreme Court. In *Johnson v. State,* 118 Nev. 787, 59 P.3d 450 (2002), that Court concluded that the weighing process is in part a factual determination, not

merely discretionary weighing. *Id.* at 460. Although the Nevada Supreme Court observed that *Ring* expressly did not address any "Sixth Amendment claim with respect to mitigating circumstances," the court concluded that *Ring* required a jury finding as to weighing. *Id.* For the reasons already given we respectfully disagree.

■ In sum, we conclude that the Indiana Death Penalty Statute does not violate the Sixth Amendment as interpreted by *Apprendi* and *Ring.* Once a statutory aggravator is found by a jury beyond a reasonable doubt, the Sixth Amendment as interpreted in *Ring* and *Apprendi* is satisfied. Indiana now places the weighing process in the hands of the jury, but this does not convert the weighing process into an eligibility factor. The outcome of weighing does not increase eligibility. Rather, it fixes the punishment within the eligible range. It is therefore not required to be found by a jury under a reasonable doubt standard. And as a matter of Indiana state law, under the Indiana death penalty statute the weighing process is not subject to a reasonable doubt standard. That second step, consistent with the view we expressed in *Bivins,* is in part a determination whether to impose the maximum sentence allowed. That is an exercise in judgment that is not capable of evaluation beyond a reasonable doubt, and our statute properly omits any standard by which it is to be measured.

## VII.  Trial Rule 59(J)(7)

Indiana Trial Rules apply to criminal proceedings if they do not conflict with the Rules of Criminal Procedure. *Moore v. State,* 273 Ind. 268, 403 N.E.2d 335, 336 (1980). Indiana Criminal Rule 16(B) expressly incorporates Trial Rule 59 dealing with Motions to Correct Error insofar as applicable and when not in conflict with any specific rule adopted by the Indiana

Supreme Court for the conduct of criminal procedure. Ritchie contends that the death penalty statute conflicts with Trial Rule 59. Indiana Trial Rule 59(J)(7) provides that a trial court is to grant a new trial if the jury verdict is against the weight of the evidence. Ritchie contends that this Rule trumps Indiana Code section 35–50–2–9(e)(2) (2002) which requires a trial judge, after receiving the jury's "recommendation" in a death penalty case, to sentence the defendant "accordingly."

■■ In general, if a statute conflicts with a validly adopted Trial Rule, the rule prevails. *Harrison v. State,* 644 N.E.2d 1243, 1251 n. 14 (Ind.1995) (overruled on other grounds). But here we find no conflict. By its terms, Rule 59(J)(7) applies to "verdicts, judgments, and findings." The Rule does not apply to the weighing process that occurs pursuant to the Death Penalty Statute, because that process is neither a verdict, a judgment, nor a finding. As explained in Part VI, the weighing process in Indiana's Death Penalty Statute differs from the traditional jury functions of finding facts and reaching a verdict. The weighing process is similar to the exercise undertaken by the judge in all contexts other than the death penalty. Just as it does not lend itself to being judged "beyond a reasonable doubt," it is not susceptible to evaluation as against the weight of the evidence.

## VIII.  Prosecutorial Misconduct

■ Ritchie contends that two instances of alleged prosecutorial misconduct warrant a mistrial. If an appellant properly preserves the issue of prosecutorial misconduct for appeal the reviewing court first determines whether misconduct occurred, and if so whether it had a probable persuasive effect on the jury. *Brown v. State,* 799 N.E.2d 1064 (Ind.2003); *Cox v. State,* 696 N.E.2d 853, 859 (Ind.1998).

"Although often phrased in terms of 'grave peril,' a claim of improper argument to the jury 'is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant.'" *Brown*, 799 N.E.2d 1064, 1066 n. 1 (citations omitted); *Lopez v. State*, 527 N.E.2d 1119, 1125 (Ind. 1988). *See also, Rodriguez v. State*, 795 N.E.2d 1054, 1059 (Ind.Ct.App.2003) (trans.denied). We conclude that these occurrences do not warrant a new trial.

### A. *Michael Moody's testimony*

■■■■ Ritchie planned to call his accomplice, Michael Moody, as a witness. Subsequently, Moody invoked his Fifth Amendment rights because the prosecution notified Moody that it planned to charge Moody in connection with the death of Officer Toney. Ritchie contends that the State's charging Moody functionally prevented Moody from testifying and giving exculpatory evidence at trial.[4] Ritchie offers no evidence that the State overstepped its authority or deliberately charged Moody for the purpose of preventing him from testifying. Prosecutorial misconduct may occur when the prosecution chills potential defense testimony by threats of prosecution or vindictive behavior. To prove misconduct of this type, the defendant must show that the State acted with the deliberate "intention of distorting the judicial fact-finding process." *Moore v. State*, 655 N.E.2d 1251, 1253 (Ind.Ct. App.1995) (citations omitted). The mere fact that the State charged Moody after Ritchie listed Moody as a witness does not establish that the State purposely did this to distort fact-finding in Ritchie's case. Ritchie provides no other evidence to support this claim, and this showing is not enough. Unlike *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), where the government deported the witness, Moody's unavailability resulted from his unilateral election to exercise his Fifth Amendment right.

### B. *Ritchie's Tattoo*

■■■■ The prosecutor referred during the guilt phase to a tattoo on Ritchie's neck displaying the numbers three and seven. Ritchie contends that this was a reference to officer Toney's badge number. There is no showing that the jury was aware that Officer Toney's badge number was 37. The potential prejudice is therefore solely whatever effect Ritchie's having a tattoo might have on the jury. Ritchie argues that this reference constituted prosecutorial misconduct because the trial judge had granted Ritchie's motion *in limine* to bar reference to the tattoo during the guilt phase. Sanctions for violation of the trial court's pretrial order are for the trial court to assess. *Underwood v. State*, 644 N.E.2d 108, 111 (Ind.1994). The issue before this Court is whether the misconduct requires a retrial, not whether it violates a trial court order.

■■■■ As a freestanding ground for mistrial, the trial court's rulings as to misconduct are reviewed for abuse of discretion. Although the reference may have constituted misconduct, in order to grant a mistrial, the trial court must determine that no lesser step could have rectified the situation. *Id.* "The trial court has discre-

---

4. Moody allegedly was to testify regarding Ritchie's intent in that Ritchie allegedly told Moody that he fired his gun without turning around. Moody was also to testify that Ritchie said he did not know that the officer had been hit. Both of these would presumably be inadmissible hearsay. To establish Ritchie's remorse, Ritchie says Moore would also testify that Ritchie cried on Moody's shoulder when he heard that he killed Officer Toney.

tion in determining whether to grant a mistrial, and the decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury." *Schlomer v. State,* 580 N.E.2d 950, 955 (Ind.1991). The trial court felt that the reference was not so prejudicial to warrant a new trial. We hold that the trial court did not abuse its discretion in ruling as it did and we decline to disturb the trial judge's ruling.

## IX. Sufficiency of the Evidence

■■■■ Ritchie challenges the sufficiency of the evidence that he had the requisite *mens rea* to support the murder conviction. As a general matter, when reviewing a claim of insufficient evidence, we decline to reweigh the evidence and substitute our judgment for that of the trial court. *Soward v. State,* 716 N.E.2d 423, 425 (Ind.1999). A claim of insufficient evidence will prevail if no reasonable trier of fact could have found Ritchie guilty beyond a reasonable doubt. *Torres v. State,* 673 N.E.2d 472, 473 (Ind.1996). Ritchie argues that he shot at Officer Toney without aiming, and there is therefore insufficient evidence to show intent to kill. Ritchie contends that certain evidence presented at trial displays his lack of intent. Ritchie notes that the expert witnesses could not establish whether Ritchie was stationary or not, or which way he was facing when he fired the shots, or whether he was moving towards or away from Officer Toney. Either an intentional or a knowing killing is required for murder. Ind.Code § 35–41–2–2 (1998). *Lehman v. State,* 730 N.E.2d 701, 704 (Ind.2000). A person "knowingly" kills when aware of a high probability that he is engaged in a killing. A person acts intentionally if "when he engages in the conduct, it is his conscious objective to do so." I.C. § 35–41–2–2(a–b); *Heavrin v. State,* 675 N.E.2d

1075, 1079 (Ind.1996). Both intentional and knowing actions may be inferred from the circumstances. *Mitchell v. State,* 557 N.E.2d 660, 664 (Ind.1990); *Johansen v. State,* 499 N.E.2d 1128, 1132 (Ind.1986); *Cole v. State,* 475 N.E.2d 306, 308 (Ind. 1985). Shooting a handgun, even if merely shooting backwards without stopping and aiming, in an effort to "slow down" a pursuing officer meets the test of "knowing." *Francis v. State,* 758 N.E.2d 528, 535 (Ind. 2001); *Hawkins v. State,* 748 N.E.2d 362, 363 (Ind.2001). Ritchie claims he did not physically "trap" officer Toney and methodically murder him. A reasonable trier of fact could nevertheless readily find that his conduct satisfied the element of a knowing killing.

Even if we accept Ritchie's claim that the shooting was subjectively intended to "slow down" officer Toney, one who fires a handgun in this manner may be found to be "aware of a high probability" that death will result. *Barker v. State,* 695 N.E.2d 925, 931 (Ind.1998). *Accord Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996) ("Firing three shots in the general direction of a victim constitutes using a deadly weapon in a manner likely to cause death.") Ritchie fired four shots, and at least two were fired from a stationary position. Finally, there is no serious doubt that Ritchie was aware his victim was a law enforcement officer. These facts are enough for a reasonable trier of fact to conclude that Ritchie knew he was being chased by a law enforcement officer and that he knowingly killed Officer Toney. The jury was properly instructed on this point and so found.

## X. Juror Note

■■■ After the verdict, but before the jury retired to deliberate on the death penalty, a juror sent a note to the trial judge stating that she wanted to file a complaint against one of Ritchie's attorneys because of his reference to her during

his closing argument. Specifically, the juror complained of two statements. First, the defense attorney said: "The foreman will write their name, or should I say forewoman, because we all know who that is." The juror thought it was improper for Ritchie's counsel to identify the foreperson in that manner. Second, Ritchie's counsel mentioned a song in closing argument and noted "[t]his one goes so far back none of you remember it, but [the foreperson]. . . ." The foreperson was offended by what she saw as counsel's singling her out and identifying her by name in front of the entire courtroom. She equated this to a moral wrong. In response, the trial judge inquired as to whether the attorney's comments affected the juror's deliberations. She replied that it did not and added her view that it did not affect the other jurors' deliberations. Ritchie provides no support for the view that the mere fact that the juror was upset with Ritchie's attorney warrants a new trial. Rather, he complains of a reference by his own counsel, but he asserts no claim of ineffective assistance. *Joyner v. State,* 736 N.E.2d 232, 237 (Ind.2000) ("A defendant may not invite error and then complain on review.")

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, and SULLIVAN, JJ., concur.

RUCKER, J., concurs in part and dissents in part with separate opinion.

RUCKER, J., concurs in part and dissents in part.

Because I believe the jury must find beyond a reasonable doubt that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances I respectfully dissent from Part VI of the majority opinion.

The majority cites *Bivins* for the proposition that "[t]he determination of the weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt but is a balancing process." Op. at 266 (quoting *Bivins,* 642 N.E.2d at 946). Whatever validity this proposition may have had previously, it can no longer pass constitutional muster under the doctrine expressed in *Apprendi* and *Ring.*

In the abstract it does appear sound to say that "[o]nce a statutory aggravator is found by a jury beyond a reasonable doubt, the Sixth Amendment as interpreted in *Ring* and *Apprendi* is satisfied. . . . The outcome of weighing does not increase eligibility. Rather, it fixes the punishment within the eligible range." Op. at 268. Indeed the *Apprendi/Ring* doctrines do not dictate which factors a State may require for imposition of capital punishment. Rather, States are free to determine these factors for themselves. However, once the factors are determined, the Sixth Amendment as interpreted by *Apprendi* and *Ring* require that they be submitted to the jury and proved beyond a reasonable doubt. Unlike the capital sentencing schemes in some other jurisdictions,[1] our

1. In support of its view the majority cites authority from foreign jurisdictions whose death penalty statutes are materially different from those of Indiana. *See, e.g., California v. Prieto,* 30 Cal.4th 226, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (2003) (discussing California Penal Code section 190.2, which declares that the

"penalty for a defendant who is found guilty of murder in the first degree is death or [life without parole] if one or more of the following special circumstances has been found". The weighing factor merely sets the penalty within the maximum allowed range). *See Pulley v. Harris,* 465 U.S. 37, 51–52, 104

statute unequivocally requires the existence of two distinct factors before death can be imposed. The statute reads in pertinent part:

(e) For a defendant sentenced after June 30, 2002 .... [t]he jury may recommend:

(1) the death penalty; or

(2) life imprisonment without parole;

only if it makes the findings described in subsection (*l*).

Subsection (*l*) reads:

Before a sentence [of death or life without parole may be imposed] the jury ... must find that:

(1) the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; *and*

(2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.

I.C. § 35–50–2–9(e), (*l*) (emphasis added). Consistent with legislative mandate this Court also has recognized that both factors must be established before a capital sentence may be imposed. *See, e.g., Brown v. State*, 698 N.E.2d 1132, 1144 (Ind.1998) (Before a sentence of death may be im-

posed "[o]ur death penalty statute requires the sentencer to find at least one aggravating circumstance beyond a reasonable doubt, to consider and evaluate any mitigating factor it may find to exist, *and* to weigh the aggravators and mitigators ...." (emphasis added)); *Judy v. State*, 275 Ind. 145, 416 N.E.2d 95, 106 (1981) ("The jury may recommend the death penalty *only if* it unanimously finds beyond a reasonable doubt that at least one of the aggravating circumstances exists, *and* that the mitigating circumstances, if any, do not outweigh the aggravating circumstances." (emphasis added)).

In essence our Legislature has chosen to make death eligibility contingent upon the finding of two separate and independent factors. The majority parses these factors by characterizing one as an "eligibility factor" and the other an "exercise in judgment." *See* op. at 266, 268. However, regardless of the labeling, the Supreme Court has made clear that "the relevant inquiry is one not of form but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348. "If a State makes an increase in a defendant's authorized punishment

S.Ct. 871, 79 L.Ed.2d 29 (1984) (declaring that "[u]nder [California's] scheme, a person convicted of first-degree murder is sentenced to life imprisonment unless one or more 'special circumstances' are found, in which case the punishment is either death or life imprisonment without parole.... The trial judge then reviews the evidence and, in light of the statutory factors, makes an 'independent determination as to whether the weight of the evidence supports the jury's findings and verdicts.'") (quoting section 190.4(e)); *Brice v. Delaware* 815 A.2d 314 (Del.2003) (discussing title 11, section 4209 of the Delaware Code, which declares: "[I]f the existence of at least 1 statutory aggravating circumstance ... has been found beyond a reasonable doubt by the jury, the Court ... shall impose a sentence of death if the Court finds by a preponderance

of the evidence ... that the aggravating circumstances ... outweigh the mitigating circumstances found by the Court to exist." § 4209(d)(1)); *Nebraska v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003) (discussing sections 29–2520(4)(g) and (h) of the Nebraska Revised Statutes under which the jury is dismissed once it finds the existence of aggravating factors beyond a reasonable doubt: "Upon rendering its verdict as to the determination of the aggravating circumstances, the jury shall be discharged." 29–2520(4)(g). The weighing process and final sentence are left to the discretion of a panel of judges: "If one or more aggravating circumstances are found to exist, the court shall convene a panel of three judges to hold a hearing to receive evidence of mitigation ...." 29–2520(4)(h).).

contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring*, 536 U.S. at 602, 122 S.Ct. 2428. In this jurisdiction, the increase of a defendant's punishment from a term of years to a sentence of death is contingent not only upon the existence of one or more aggravating factors, but also upon a finding that the aggravating factor(s) outweigh(s) any mitigating factor(s). *See* I.C. § 35–50–2–9(e), (*l*). This statutory "finding" is a necessary predicate to the imposition of a death sentence. "[A]ll facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt." *Ring*, 536 U.S. at 610, 122 S.Ct. 2428 (Scalia, J., concurring). Simply put, it is the structure of Indiana's capital sentencing statute that pulls it within the embrace of the *Apprendi* and *Ring* doctrine. The plain language of Indiana's capital sentencing scheme makes death eligibility contingent upon certain findings that must be weighed by the jury. I agree with the majority that these findings require an "exercise in judgment." *See* op. at 268. Nonetheless they are at a minimum the type of findings anticipated by *Apprendi* and *Ring* and thus require proof beyond a reasonable doubt.

This does not mean however that I would declare unconstitutional the weighing portion of Indiana's death penalty statute. "Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing." *Eukers v. State*, 728 N.E.2d 219, 221 (Ind.Ct.App.2000). "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citation omitted); *Price v. State*, 622 N.E.2d 954, 963 (Ind. 1993). "[C]onstitutionally doubtful constructions should be avoided where fairly possible." *Miller v. French*, 530 U.S. 327, 336, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (internal quotation omitted); *Bennett v. State*, 801 N.E.2d 170, 174 (Ind.Ct.App. 2003), *trans. not sought*. I would therefore construe section 35–50–2–9(*l*) of the Indiana Code as implicitly requiring the jury to find beyond a reasonable doubt that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances. As thus interpreted the statute passes constitutional muster.

The question then is what is the effect in this case of the trial court's failure to instruct the jury that it must apply a reasonable doubt standard in the weighing process? The record shows the trial court gave several preliminary as well as final jury instructions concerning the weighing of aggravating and mitigating circumstances. None required a reasonable doubt standard. However, the record shows that Ritchie did not object at trial to the jury instructions given by the trial court nor did he submit instructions of his own. Thus, this issue is waived for review unless fundamental error occurred. *Sanchez v. State*, 675 N.E.2d 306, 308 (Ind. 1996). Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. *Borders v. State*, 688 N.E.2d 874, 882 (Ind. 1997). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994). The element

of harm is not shown by the fact that a defendant was ultimately convicted. *Id.* Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.*

Here, Ritchie makes no claim of fundamental error nor does the record support such a claim. As aggravating circumstances the State alleged in the penalty phase of trial that the victim of Ritchie's murder was a law enforcement officer acting in the course of duty when murdered, *see* I.C. 35–50–2–9(b)(6)(A); and that Ritchie committed the murder while on probation. *See* I.C. 35–50–2–9(b)(9)(C). The State incorporated evidence introduced in the guilt phase of trial to support its allegation. In mitigation Ritchie, who was twenty-two years of age at the time of the murder, introduced evidence of his difficult childhood that included his lack of bonding before the age of two. During closing argument Ritchie highlighted his mitigation evidence and argued passionately for a term of years or at least no more than a sentence of life without parole. Tr. at 2839–54. The jury rejected Ritchie's argument, found that the State had proved beyond a reasonable doubt the existence of both aggravating circumstances, found that the aggravating circumstances were not outweighed by the mitigating circumstances, and recommended the death penalty. Under the circumstances Ritchie has failed to demonstrate that he was denied a fair trial. In sum no fundamental error occurred on this issue.

For the reasons expressed, I dissent from part VI of the majority opinion. In all other respects I concur.