**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2013, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.S., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  49A04-1209-JV-490 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT, JUVENILE DIVISION
The Honorable Marilyn A. Moores, Judge
Cause No. 49D09-1207-JD-1864

**April 18, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, the juvenile court adjudicated J.S. a delinquent child for committing what would have been class D felony Resisting Law Enforcement[1] if committed by an adult after he was caught disregarding a stop sign on a moped and then leaving the scene. Contending that the police officer merely held up his hand in an ambiguous gesture during a brief traffic stop before leaving J.S. to pursue his friend, J.S. claims that the evidence was insufficient to prove that he knowingly or intentionally fled from the officer when he left to go home, especially in light of his tender years and immaturity. Finding the evidence sufficient to support the true finding of delinquency, we affirm the judgment of the juvenile court.

FACTS

On July 5, 2012, fourteen-year-old J.S. and a friend were riding mopeds when they failed to stop at a stop sign. Sergeant Michael Lair of the Lawrence Police Department, who was patrolling the area in an unmarked police vehicle headed in the opposite direction, observed the two teenagers disregard the stop sign and then veer into his lane of traffic. Sergeant Lair had to pull his emergency brake to keep from hitting them, so he turned around and initiated a brief stop of J.S. before also leaving J.S. to attempt to locate J.S.'s friend, who had driven out of sight. Although Sergeant Lair had intended for J.S. to wait for him to return, J.S. left the scene but was later located at his residence. Thereafter, the State filed a delinquency petition alleging that J.S. had committed an act

---

[1] Ind. Code § 35-44.1-3-1.

that would have been resisting law enforcement, a class D felony, if committed by an adult.

At a hearing on August 22, 2012, Sergeant Lair and J.S. presented different accounts of the brief stop. Sergeant Lair testified that he activated his emergency lights and sirens to stop J.S., but ultimately he had to pull the front of his vehicle to the curb in front of J.S.'s moped before J.S. stopped. Sergeant Lair then rolled down his passenger side window and told J.S., "[B]oys you stay here." Tr. p. 10. Although the moped was loud, Sergeant Lair believed he spoke loudly enough so that J.S. could hear him over the sound of the moped's engine. As Sergeant Lair drove away to pursue the other moped, he observed J.S. leaving through his rearview window. Shortly thereafter, Sergeant Lair located J.S. at his home, where the moped was in the driveway.

J.S. recounted a slightly different version of the events. J.S. claimed that Sergeant Lair never activated the siren or lights on the unmarked police vehicle, but J.S. stopped on his own because he had seen a vehicle turn around and thought it was probably the police. J.S. claimed that Sergeant Lair "barely stopped," that Sergeant Lair did not say anything to him, and that Sergeant Lair "just put his hand up and waved, . . . like pushed out his hand." Tr. p. 27. J.S. stated that he interpreted the "palm out" hand signal to mean "[g]et out of my face" because that is what his mother means when she uses that hand signal. Id. at 31. Then, when Sergeant Lair left to pursue his friend, J.S. "figure[d] he didn't even really want me." Id. at 30. J.S. felt that he was left "just sitting there like a dummy at the corner, so [he] turn[ed] around and [went] home." Id. at 27.

3

J.S.'s counsel attempted to impeach Sergeant Lair's testimony by observing that Sergeant Lair failed to state in his police report that he had verbally instructed J.S. to remain where he was and that the report stated only that Sergeant Lair "looked at [J.S.] to stop the other vehicle." Tr. p. 17. Sergeant Lair admitted that his report does not reference any verbal commands to stop, but he claimed that he had merely omitted that information by mistake. Finally, J.S.'s mother testified that when she spoke with Sergeant Lair shortly after J.S. had returned home, Sergeant Lair told her that he "threw his hand up for [J.S.] to stop, and went after the other guy," but he did not mention verbally telling J.S. to stop. Id. at 23.

At the conclusion of the hearing, the juvenile court entered a true finding that J.S. was a juvenile delinquent because he had committed an act that would have been resisting arrest, a class D felony, had it been committed by an adult. The juvenile court held a disposition hearing on September 5, 2012, and J.S. now appeals.

## DISCUSSION AND DECISION

J.S. contends that the State presented insufficient evidence to support the true finding for resisting law enforcement. More precisely, J.S. claims that when the evidence is viewed in light of the United States Supreme Court's recognition "that children are not miniature adults, that they lack the capacity to exercise mature judgment, and [that] they incompletely understand the world around them," appellant's br. p. 4, the State proved only that J.S. was confused by Sergeant Lair's hand gesture to wait for him and that he

4

left the scene when Sergeant Lair sped after his friend.  In other words, J.S. claims that the State failed to prove that he knowingly or intentionally fled from Officer Lair.

In reviewing a claim of insufficient evidence in delinquency proceedings, we apply the standard of review that applies to all sufficiency matters.  Johnson v. State, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999).  We consider only the probative evidence and reasonable inferences supporting the verdict.  Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).  We do not reweigh the evidence or assess the credibility of witnesses, and we consider conflicting evidence most favorably to the trial court's ruling.  Id.

As in adult criminal prosecutions, the State must prove every element of the offense beyond a reasonable doubt to obtain a juvenile delinquency adjudication.  A.B. v. State, 885 N.E.2d 1223, 1226 (Ind. 2008).  Here, the delinquency petition alleged that J.S. had violated Indiana Code section 35-44.1-3-1, which makes it a class D felony to use a vehicle to "knowingly or intentionally . . . flee[] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop."

Citing J.D.B. v. North Carolina, 131 S. Ct. 2394 (2011), J.S. asserts that the trial court erred by failing to take into account J.S.'s age in determining whether or not he knowingly or intentionally fled from Sergeant Lair.  See J.D.B., 131 S. Ct. at 2403-06

5

(holding that a minor's age is a relevant circumstance under Miranda[2] for the objective determination of whether a reasonable person in the minor's position would feel free to leave police questioning because "children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them").

Notwithstanding this claim, a determination of whether a person knowingly or intentionally committed a crime, which is the relevant inquiry here, is a subjective analysis and primarily a question of fact, not law. See Ritchie v. State, 809 N.E.2d 258, 270 (Ind. 2004). The finder of fact may properly infer the existence of the requisite level of mens rea from the circumstances. Id. at 273. So long as there is sufficient evidence in the record from which this inference could be made, we will not second-guess a conviction or juvenile delinquency adjudication even where conflicting evidence on one's mental state is presented. See Owens v. State, 272 Ind. 652, 655, 400 N.E.2d 1124, 1126 (1980) (stating that the jury was not obliged to accept the defendant's explanation that he killed another in sudden heat when sufficient evidence existed from which the jury could have inferred that the defendant acted knowingly).

In the instant case, regardless of J.S.'s argument that he was confused by Sergeant Lair's hand signal and thought that he was free to leave, the State presented sufficient evidence to meet its burden of showing that J.S. knowingly or intentionally fled from a law enforcement officer. Indeed, Sergeant Lair testified that he activated the police

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

vehicle's emergency lights and siren, pulled the vehicle directly in front of J.S.'s moped to stop him, and verbally commanded J.S. to stay where he was. Tr. p. 10. Additionally, Sergeant Lair apparently held up his hand in a gesture that reasonably could have been interpreted to further communicate his desire for J.S. to stop and wait for him to return. Tr. p. 23, 27-29.

The judgment of the juvenile court is affirmed.

MAY, J., and MATHIAS, J., concur.