**Donald Earl HOUSER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 57S00–0310–CR–433.

Supreme Court of Indiana.

March 10, 2005.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Donald Earl Houser was convicted of the murder of an elderly woman during the course of burglarizing her home. He challenges his convictions on grounds of trial court error in the admission of certain evidence, the constitutionality of the statute under which he was sentenced, and the severity of the sentence itself. We affirm the convictions and sentences. Any error in the admission of evidence was harmless given the evidence of Houser's guilt; we have previously addressed and rejected the constitutional claims; and the sentence here is appropriate given the relative weight of the charged aggravating circumstance and the mitigating circumstances.

### Background

The evidence most favorable to the judgment indicates that in September, 1996, Defendant Donald Houser, and his girlfriend, Angela Stone, broke into the home of 86-year-old Julia Gaerte in rural Noble County. Before entering Gaerte's home, Houser had cut the phone line. He entered the home through a back window, which he had broken to gain entry. Houser went through the home taking a television, a VCR, and silverware, as well as various credit cards and checks. At some point during this episode, he suffocated Gaerte by placing a pillow over her face. Her body was found the next day by her daughter-in-law.

Houser eluded apprehension for these crimes for four years. On October 26, 2000, Angela Stone implicated Houser in the burglary and murder during police questioning with Indiana State Police Detective Mark R. Heffelfinger. The same day, police recovered silverware taken from Gaerte's home after executing a search warrant at Houser's mother's home in LaGrange County; Houser had given the silverware to his mother as a Christmas gift. The next day, Detective Heffelfinger questioned Houser who had been brought to Noble County from Otter Creek Correctional Facility in Kentucky where he was serving a sentence for burglary. During the interrogation, Houser confessed that he had burglarized Gaerte's home and killed her by suffocating her with a pillow. Additional factual information will be provided *infra* as necessary.[1]

---

1. We note that there is an incomplete transcript from the trial court in this case due to

Houser was charged with the knowing or intentional murder of Gaerte[2] and burglary causing death.[3] The State also sought a sentence of life imprisonment without possibility of parole. As the aggravating circumstance justifying life imprisonment without parole, the State charged that Houser had intentionally killed Gaerte while committing the crime of burglary.[4]

During Houser's jury trial, he took the stand in his own behalf. On November 12, 2002, the jury returned verdicts of guilty on both counts.

The next day, the jury reconvened for the penalty phase of the trial during which it received evidence with respect to the charged aggravating circumstance and mitigating circumstances. Its verdict utilized three forms: a unanimous finding that the State had proved the existence of the charged aggravating circumstance beyond a reasonable doubt; a unanimous finding that the charged aggravating circumstance outweighed any mitigating circumstances; and a unanimous recommendation that Houser be sentenced to life imprisonment without possibility of parole.

On February 4, 2003, the trial court sentenced Houser to life imprisonment without possibility of parole for murder and 20 years in prison for burglary.

## Discussion

### I

Houser contends that the trial court erroneously allowed the jury to hear testimony that he was incarcerated in Kentucky at the time he faced police questioning regarding Gaerte's death. He argues that this testimony's sole purpose "was to establish that Houser's character was bad, and that he was predisposed to committing burglaries" and, as such, violated Indiana Rule of Evidence 404(b).[5]

As mentioned *supra*, Houser took the stand in his own defense. In his brief to this Court, Houser tells us that during his direct examination, he testified that he was currently living with his mother in LaGrange County and that in October, 2000, he was living in Kentucky when he received word that Detective Heffelfinger wanted to question him concerning Gaerte's death; that when he learned this, he came back to Indiana to meet with Heffelfinger. Houser goes on to tell us that the State then successfully sought the trial court's permission to reveal to the jury that he had been incarcerated in Kentucky, contending that Houser had "opened the door" to presenting this information. Houser argues that his statement about residing in Kentucky was accurate and in no way left the jury with a false or misleading impression of the facts.

Were that all there was to it, we might be inclined to agree with Houser. But in addition to that part of Houser's testimony that he includes in his brief, Houser also testified on direct examination that he did not remember his interview with Heffelfinger in which he confessed to Gaerte's murder because he had ingested LSD prior to being questioned; that the LSD he

---

equipment malfunction. Where the transcript record has been compromised, the parties have jointly filed a Verified Statement of the Evidence. *See* Ind. Appellate Rule 31(A).

**2.** Ind.Code § 35–42–1–1 (2004).

**3.** Ind.Code § 35–43–2–1(2) (2004).

**4.** Ind.Code § 35–50–2–9(b)(1)(B) (2004).

**5.** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ind. Evidence Rule 404(b).

took made him lethargic, confused, and unable to fully appreciate his actions; that it was common to be able to obtain illegal drugs while incarcerated; and that he wanted to call his mother prior to the interview to tell her he was no longer in Kentucky but was not allowed to make the call until the interview was completed. Once Houser himself volunteered that he had taken LSD while incarcerated a short time before his interview with Heffelfinger, the State was entitled to explore further the circumstances of Houser's admitted procurement of LSD and incarceration in Kentucky. We find no abuse of discretion in the trial court's allowing the State to pursue this line of questioning.

## II

### A

While on the witness stand, Detective Heffelfinger testified that "[d]uring his first interview with [Angela] Stone ... [he was told] that Houser listened frequently to the song "Night Prowler" by AC/DC."[6] Appellant's App. 285. The State then moved to have the lyrics of the song admitted into evidence over Defendant's objection to their relevance. The State responded that the lyrics were relevant to the element of Houser's intent in committing burglary and murder. The trial court overruled Houser's objection and allowed the text of the song's lyrics into evidence as State's Exhibit No. 43.

"Night Prowler" describes an individual who sleeps during the day and prowls at night, who "break[s] down your door ...

[and] make[s] a mess of you." State's Ex. No. 43. Angela Stone, when asked about the content of the lyrics of "Night Prowler," testified that the song was about "[s]neaking around and, you know, getting in people's stuff, being sneaky." Tr. at 439. No objection was raised to her testimony, which preceded the admission of the challenged song lyrics.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Evidence that is not relevant is not admissible. Evid. R. 402. As a general proposition, we do not believe there is a correlation between an individual's enjoyment of a particular piece of music and the individual's behavior.[7] But the test of relevance requires only that the evidence have "any tendency" to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. We can certainly envision circumstances where that would be the case. For example, see *Bryant v. State*, 802 N.E.2d 486, 498 (Ind.Ct.App.2004) *trans. denied*, where lyrics from two rap songs written by the defendant were deemed relevant as an indication of defendant's intent regarding victim's murder.

The more consequential determination when confronted with a challenge as to the admissibility of lyrics to a song written or favored by a defendant is whether the evidence is offered to prove

**6.** AC/DC is a "heavy metal" rock band that has enjoyed great artistic popularity for approximately three decades. Its music has also been employed by the American military for tactical purposes. Last year, Marine Humvees with loudspeakers on top blasted AC/DC at insurgents in Falluja. In 1989, the United States Army used AC/DC songs in an effort to flush Gen. Manuel Noriega, the besieged dictator of Panama, out of the Vatican mission where he had taken refuge.

**7.** Such a proposition would presuppose that individuals who enjoy listening to Charles Gounod's operatic version of *Faust* are more likely to engage in the worship of Satan.

the character of the defendant in violation of Evidence Rule 404(b) or whether the evidence's probative value is substantially outweighed by the dangers enumerated in Evidence Rule 403. We do not face Rule 403 or 404 challenges in this case, however, because Houser did not object to the admission of the "Night Prowler" lyrics on these grounds at trial. A defendant may not object on one ground at trial and raise another on appeal; any such claim is waived.[8] *Jackson v. State*, 697 N.E.2d 53, 54 (Ind.1998) (citing *Bradford v. State*, 675 N.E.2d 296, 302–03 (Ind.1996)).

 In any event, evidence admitted in violation of Evidence Rules 402, 403, or 404 will not require a conviction to be reversed "if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect a party's substantial rights." *Bassett v. State*, 795 N.E.2d 1050, 1054 (Ind. 2003) (citing Ind. Trial Rule 61; *Stewart v. State*, 754 N.E.2d 492 (Ind.2001)). When the evidence of the lyrics is viewed in light of the evidence pointing to Houser's guilt in this case, it is relegated to the status of harmless error. Houser admitted during police questioning to burglarizing the victim's home and suffocating her with a pillow, and his blood was found on a curtain where he gained entrance to the victim's house. We conclude that the probable impact of the song lyrics was sufficiently minor so as not to affect Houser's substantial rights.

## B

 We deal similarly with Houser's contention that it was error for the trial court to permit Angela Stone to testify regarding statements he made to her about killing.

Over defense counsel's objection on grounds of relevance, the State questioned Stone regarding general statements Houser had made to her with respect to killing. That testimony proceeded as follows:

> State: Ms. Stone, in the time that you were with Mr. Houser did he talk about killing?
>
> Stone: Yes.
>
> State: What did he say about it?
>
> Stone: Just that there would be no survivors.
>
> State: Did he talk about a specific way to kill people verses [sic] other ways?
>
> Stone: Yes, he did.
>
> State: What was that?
>
> Stone: It was hands on. That means you are more of a man, where if you use a gun and shoot him.

Tr. at 440–41.

The State contends that this evidence was relevant to show Houser's intent to kill Gaerte. It argues that Houser's statements had a tendency to make it more probable that Houser intended to kill Gaerte than it would have been without the evidence. Houser contends to the contrary, arguing that this testimony had little relevance, if any at all, to the Gaerte killing and was used by the State "to try to convince the jury that Houser's character was such that he would kill anyone who got in his way and that he had a propensity to kill." Br. Appellant–Def. at 34.

As with the lyrics, whether or not these statements were admissible under Indiana Rule of Evidence 402, their admission did not affect Houser's substantial rights.

---

8. Houser acknowledges that he is estopped from asserting a claim of error under Evidence Rule 404(b) because he failed to raise such an objection during his trial.

## III

■ Houser contends that his sentence of life imprisonment without parole ("LWOP") pursuant to a 2002 amendment to Indiana Code Section 35–50–2–9(e) acted as an ex post facto law and a violation of his rights under the United States and Indiana Constitutions. Prior to the 2002 amendment, a judge in a death penalty or LWOP case had the discretion to make "the final determination of the sentence, after considering the jury's recommendation. . . ." Ind.Code § 35–50–2–9(e) (2002). However, effective July 1, 2002, the sentencing law was amended to take away a sentencing judge's discretion to deviate from a jury's death or LWOP recommendation. Ind.Code Section 35–50–2–9(e) (2003) (declaring that where "the jury reaches a sentencing recommendation, the court *shall* sentence the defendant accordingly") (emphasis added).

Houser argues that because his crime occurred in 1996, the proper version of Indiana Code § 35–50–2–9(e) that should be applied in his case is the pre-amendment version granting judicial latitude in deviating from a jury recommendation of death or LWOP. Subsequent to Houser filing this appeal, we decided this issue contrary to his position. *Helsley v. State,* 809 N.E.2d 292, 300–301 (Ind.2004); *Stroud v. State,* 809 N.E.2d 274, 288 (Ind. 2004).

## IV

■ Houser further challenges. the LWOP sentence imposed on him by the trial court on the basis that the imposition of such a sentence is unconstitutional and violates the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 13 and 19 of the Indiana Constitution.[9] Specifically, Houser contends that the United States Supreme Court's holding in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires that a sentence of death or LWOP be imposed only where a jury determines unanimously and beyond a reasonable doubt that any mitigating factors that exist are outweighed by the aggravating circumstances present. *See Ring,* 536 U.S. at 609, 122 S.Ct. 2428 (holding that the Sixth Amendment requires a unanimous jury to find beyond a reasonable doubt that an aggravating factor making a defendant eligible for the death penalty exists). Subsequent to Houser filing this appeal, we decided this issue contrary to his position. *Ritchie v. State,* 809 N.E.2d 258, 268 (Ind.2004).

## V

■ Houser contends that his sentence violates the Double Jeopardy Clause of the Indiana Constitution. He argues that his conviction and sentence for burglary must be vacated because that same burglary was used as the aggravating circumstance supporting his LWOP sentence for the murder of Gaerte.

This Court has previously rejected this contention. *Overstreet v. State,* 783 N.E.2d 1140, 1165 (Ind.2003). Our rationale was that "[s]entencing pursuant to the

9. Indiana Constitution Article I, Section 13 requires that:

In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.
Indiana Constitution, Article I, Section 19 provides that:
In all criminal cases whatever, the jury shall have the right to determine the law and the facts.

death penalty or life without parole statute is a qualitatively different matter." *West v. State*, 755 N.E.2d 173, 186 (Ind.2001). "The legislature has determined that some crimes, based upon the circumstances in which they are committed warrant the death penalty or life without parole." *Id.* While "some of these circumstances may include elements of the crimes themselves, ... [the Legislature's enumerated factors] serve the narrowing function required by the Eighth Amendment. A defendant either meets or does not meet the eligibility requirements for death or life imprisonment." *Id.* As such, the "facts necessary to establish the (b)(1) aggravating circumstances serve [only] to narrow the eligibility for the penalty and are not identical to the elements of the crime." *Overstreet*, 783 N.E.2d at 1165. We continue to adhere to this reasoning.

## VI

■ Houser contends that his LWOP sentence for the murder of Gaerte is inappropriate in light of the nature of the offense and Houser's character. He requests that we exercise our authority under Appellate Rule 7(B) to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." After careful consideration, we affirm the sentence recommended by the jury and imposed by the trial court.

As we have noted *supra*, to obtain a LWOP sentence for a defendant, the State must prove beyond a reasonable doubt the existence of one or more aggravating circumstances listed in Ind.Code Section 35–50–2–9(b). The jury explicitly found that the State proved beyond a reasonable doubt that Houser committed murder during the commission of a burglary. Ind.

Code § 35–50–2–9(b)(1)(B). We agree that the State met its burden in this regard. We further find that in the circumstances of this case, this aggravating circumstance is entitled to weight in the high range.

In mitigation, Houser's defense presented evidence that he "suffered through an emotionally abusive childhood," with an "an alcoholic father who constantly belittled him." Br. Appellant at 52. Houser also presented evidence that he had been diagnosed as having an Anti–Social Personality Disorder and that he had a long-standing history of alcohol and drug abuse, both of which he contended "undoubtedly effected his judgment and ability to conform his behavior." *Id.* at 53. While he has an extensive criminal history "as a burglar and a thief," he argues, his record should be given some mitigating weight because he has "only one prior conviction that involved the use of violence or resulted in physical harm to another person." *Id.* We find the combination of mitigating circumstances here entitled to weight in the very low range.

Based on our review of the record and the law, we conclude that life without possibility of parole is appropriate for Houser's murder of Mary Lou Gaerte.

### Conclusion

We affirm the judgment of the trial court.

BOEHM, J., concurs. SHEPARD, C.J., concurs with separate opinion in which DICKSON, J., joins. RUCKER, J., concurs except as to Part IV, from which he dissents.

SHEPARD, C.J., concurring.

For the last several decades at least, Indiana law has assigned to judges the duty to decide sentences in criminal cases. Appellate court review of such trial court

decisions has been highly deferential, but we have undertaken to review and revise sentences when persuaded that the trial court's sentence is "inappropriate."

As for death penalty and life without parole cases, the legislature has largely shifted the sentencing decision from judges and assigned it to juries. I am inclined to think that we should be even less ready to set aside the sentencing judgment of jurors, and that the standard we adopted during the era of judicial sentencing should probably not apply to second-guess Indiana juries.

The parties here have not joined this question, however, and there appears no reason to reverse the jury's decision. Accordingly, I join in the Court's opinion.

DICKSON, J., joins.

RUCKER, J., dissenting in part and concurring in part.

I dissent from Part IV of the majority opinion for the reasons expressed in *Ritchie v. State*, 809 N.E.2d 258, 271–74 (Ind. 2004) (Rucker, J., dissenting in part). In all other respects I concur.