## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 26 2015, 8:40 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jeremy K. Nix | Gregory F. Zoeller |
| Matheny, Hahn, Denman & Nix, LLP | Attorney General of Indiana |
| Huntington, Indiana | |
| | Michael Gene Worden |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bradley E. Kennedy, | May 26, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 35A04-1412-CR-570 |
| v. | Appeal from the Huntington Superior Court |
| State of Indiana, | The Honorable Jeffrey R. Heffelfinger, Judge |
| *Appellee-Plaintiff.* | Case No. 35D01-1409-CM-655 |

**Vaidik, Chief Judge.**

# Case Summary

[1]     Bradley E. Kennedy appeals his conviction for Class A misdemeanor domestic battery.  Kennedy argues that the trial court abused its discretion in admitting

evidence that he was a member of a motorcycle gang because it violates Indiana Evidence Rule 404(b) and the evidence is insufficient to prove that the victim suffered bodily injury. We find that Kennedy has waived his Evidence Rule 404(b) argument because he objected on only relevancy grounds at trial and, in any event, the evidence of Kennedy's motorcycle-gang membership is harmless error in light of the overwhelming evidence that he kicked the victim. Also, we conclude that, although the victim testified on behalf of Kennedy at trial, the police officers' testimony describing her injury is sufficient to prove that she suffered bodily injury. We therefore affirm the trial court.

# Facts and Procedural History

[2] Around 7:00 p.m. on September 16, 2014, Everett Carroll, Chief of Police of the Huntington Police Department, was off-duty and in an unmarked police car driving west on Etna Avenue when he saw a man, later identified as Kennedy, "standing out near the sidewalk" acting "erratic" and "flailing" his arms in the air. Tr. p. 52. As Chief Carroll continued to drive, he saw Kennedy "go over and kick a female," later identified as Melisse Brosamer, who was sitting on a swing in front of 1146 Etna Avenue. *Id.* at 53. Kennedy kicked Melisse "[i]n the shin or lower leg area." *Id.* Chief Carroll observed that Kennedy was "upset" and "angry." *Id.* Chief Carroll was forced to slow down to about ten miles per hour because the car in front of him was turning. Chief Carroll could see Melisse "flinch[]" in response to Kennedy's kick. *Id.* at 54. He also

observed that Melisse was "visibly upset." *Id.* at 55. Chief Carroll pulled over and called on-duty officers.

[3] Sergeant Christopher McCutcheon and Officer Benjamin Spurgeon responded to the scene within a couple of minutes of Chief Carroll's call. After speaking with Chief Carroll, they approached 1146 Etna Avenue and heard yelling and screaming coming from inside. When they knocked on the door, Melisse came outside. Officer Spurgeon began talking to Melisse while Sergeant McCutcheon yelled through the door for Kennedy to come outside. When Kennedy came outside, he immediately said, "I can't believe you called the fu**ing police, bit**." *Id.* at 89. Kennedy was "not happy" to see the police and "angry" at Melisse. *Id.*

[4] Kennedy told Sergeant McCutcheon that he and Melisse had been arguing about text messages she found on his phone. Kennedy admitting kicking Melisse but claimed he did so "to de[-]escalate the situation." *Id.* at 91. Kennedy said that he and Melisse had been off-and-on for the past eight or nine years but together for the past two or three years, and they lived together at 1146 Etna Avenue. While Kennedy and Sergeant McCutcheon spoke, Kennedy looked toward Melisse and "star[ed] her down." *Id.* at 89.

[5] Meanwhile, Officer Spurgeon and Chief Carroll spoke with Melisse, who was "[c]rying and upset." *Id.* at 172. Melisse said that Kennedy had kicked her "but didn't mean to hurt her." *Id.* When they asked Melisse to show them where Kennedy had kicked her, Melisse—without hesitation—lifted up her

right pant leg, exposing a "fresh" injury. *Id.* at 172, 173. Officer Spurgeon described the injury as "[f]resh redness. It would be an abrasion or a scuff from the friction of a shoe and jean," and said there was "fresh welting or swelling." *Id.* at 111. According to Officer Spurgeon, Melisse said that her injury was painful. *Id.* at 175 ("STATE: Did she acknowledge that it was painful or that there was an injury? WITNESS: Yes."). Chief Carroll said that Melisse's shin was beginning to swell, it was red, and the skin was coming off like a rug burn. *Id.* at 59. Melisse told police that Kennedy was cheating on her based on text messages she found on his phone. When Officer Spurgeon asked Melisse if he could take photographs of her injury, she declined. *Id.* He also asked Melisse multiple times to give a statement, but she again declined, saying "she didn't want anything to be done because he didn't mean to hurt her." *Id.* When the officers were speaking to Melisse, the woman Kennedy had been texting drove by several times.

[6] Chief Carroll, Sergeant McCutcheon, and Officer Spurgeon then met and concluded that Kennedy should be arrested. Kennedy became irate when the officers handcuffed him. He yelled for his cell phone, and Melisse went to get it. However, instead of giving the phone to Kennedy, she threw it in the grass. Kennedy demanded that the officers arrest Melisse for destruction of property. While the officers were putting Kennedy in the police car, the same woman who had driven by several times "pulled up right up on the sidewalk where [they] were standing" and said, "It's [my] fault. . . . He didn't do anything." *Id.* at 63.

[7] Sergeant McCutcheon drove Kennedy to the Huntington County Jail. During the drive, Kennedy told Sergeant McCutcheon he was in a motorcycle gang called the One Percenters and the officers "had made the wrong decision." *Id.* at 96. Also, Kennedy said the officers needed to watch the house "very closely" and "watch what [they] were doing." *Id.* at 96, 97. Kennedy did not elaborate on what he meant by these statements. Kennedy continued to talk about his motorcycle gang once they arrived at the jail.

[8] The State charged Kennedy with Class A misdemeanor domestic battery for knowingly touching Melisse, with whom he was living as if a spouse, in a rude, insolent, or angry manner resulting in bodily injury to Melisse. Appellant's App. p. 7; *see also* Ind. Code § 35-42-2-1.3(a)(2). At Kennedy's jury trial, defense counsel objected on relevancy grounds only when Sergeant McCutcheon began testifying about Kennedy's statements regarding his motorcycle-gang membership. Tr. p. 95. The judge quickly overruled defense counsel's objection without any discussion of the matter. *Id.* at 96. Melisse testified on behalf of Kennedy at trial. Specifically, she testified that Kennedy "acted like he was getting ready to kick me but . . . I guess I felt contact but I really didn't feel anything." *Id.* at 127. She claimed he kicked her left calf and described the kick as a "nudge" or "tap." *Id.* at 127, 128. Melisse said she was never in any pain and that there was no injury from Kennedy's kick. *Id.* at 128. Instead, Melisse explained that when she walked outside her house, the door swung open and hit her right leg. She admitted, however, showing the officers her right leg—and not her leg left that she claimed Kennedy kicked.

The jury found Kennedy guilty as charged, and the trial court sentenced him to 365 days executed in the Huntington County Jail.

Kennedy now appeals.

# Discussion and Decision

Kennedy raises two issues on appeal. First, Kennedy contends that the trial court abused its discretion when it admitted evidence that he was a member of a motorcycle gang because it violates Indiana Evidence Rule 404(b). Second, he contends that the evidence is insufficient to prove that Melisse suffered a bodily injury.

# I. Indiana Evidence Rule 404(b)

During trial, the State introduced evidence that Kennedy told Sergeant McCutcheon that he was in a motorcycle gang and the officers should watch out. Kennedy contends that the trial court abused its discretion when it admitted this evidence because it violates Indiana Evidence Rule 404(b), which provides:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

Rule 404(b) is designed to prevent the jury from making the forbidden inference that prior wrongful conduct suggests present guilt. *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013).

[13] The law governing the admissibility of specific-acts evidence for "another purpose" requires a trial court to make three findings. *Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009), *reh'g denied*. First, the court must determine that the evidence of the crime, wrong, or other act is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Second, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. *Id.* Last, the court must balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Id.*

[14] The State argues that the admissibility of the motorcycle-gang evidence "for another purpose" is "unclear because [Kennedy] failed to object on Rule 404(b) grounds and, thus, there was no discussion regarding the purpose of the evidence, nor was there any discussion concerning the probative value of the evidence versus its prejudicial effect." Appellee's Br. p. 9. The record shows that defense counsel objected on relevancy grounds, and the trial court quickly overruled the objection without any discussion.

[15] Grounds for objection must be stated specifically at trial to preserve for appeal any claim of error in the admission of evidence. 12 Robert Lowell Miller, Jr., *Indiana Practice* § 103.108 (3d ed. 2007). Similarly, the grounds asserted on

appeal must be the same as those stated in the trial court. *Id.* New or different objections cannot be raised on appeal. *Id.* In addition, when counsel states specific grounds for objection at trial, he implies that there are no other grounds for objection; if other grounds exist, they are impliedly waived. *Id.* Accordingly, an appellant is confined to the specific objection stated in the trial court. *Id.* Thus, evidence that technically is inadmissible may be admitted over objection if the objector states improper grounds. *Id.*

[16] The Indiana Supreme Court addressed this issue in *Houser v. State*, 823 N.E.2d 693 (Ind. 2005). At trial, the defendant objected to song lyrics on relevancy grounds, but the real issue was whether the evidence violated Rule 404(b) or 403. *Id.* at 697-98. Our Supreme Court held that because the defendant did not object to the admission of the evidence on Rule 404(b) or 403 grounds at trial, the issue was waived on appeal. *Id.* at 698. The Court cited the principle that a defendant may not object on one ground at trial and raise another on appeal. *Id.*; *see also King v. State*, 799 N.E.2d 42, 49 (Ind. Ct. App. 2003) (holding that because defendant objected at trial on relevancy grounds, he waived his Rule 404(b) argument on appeal), *trans. denied*.

[17] "In any event, evidence admitted in violation of Evidence Rules 402, 403, or 404 will not require a conviction to be reversed 'if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect a party's substantial rights.'" *Houser*, 823 N.E.2d at 698 (quoting *Bassett v. State*, 795 N.E.2d 1050, 1054 (Ind. 2003)). When the evidence of Kennedy's motorcycle-gang membership is viewed in light of the evidence pointing to his

guilt in this case, it is relegated to the status of harmless error. Kennedy admitted to police that he kicked Melisse to de-escalate the situation. In addition, Chief Carroll saw Kennedy kick Melisse, and Melisse admitted at trial that Kennedy kicked her. We conclude that the probable impact of Kennedy's motorcycle-gang membership was sufficiently minor so as not to affect his substantial rights.

# II. Bodily Injury

[18] Kennedy also contends that the evidence is insufficient to prove that Melisse suffered a bodily injury. When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. *Id.* We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[19] Indiana Code section 35-31.5-2-29 defines bodily injury as "any impairment of physical condition, including physical pain." In *Bailey*, the Indiana Supreme Court held that any level of pain can constitute bodily injury and that "physical pain *is* an impairment of physical condition." 979 N.E.2d at 138, 142.

[20] Here, the evidence shows that Kennedy kicked Melisse. Chief Carroll testified that he saw Kennedy kick Melisse, and both Kennedy and Melisse admitted that he kicked her. At the scene, Melisse—without hesitation—showed the officers where Kennedy had kicked her. Officer Spurgeon described the injury as "[f]resh redness. It would be an abrasion or a scuff from the friction of a shoe and jean," and said there was "fresh welting or swelling." Tr. p. 111. According to Officer Spurgeon, Melisse said that her injury was painful. *Id.* at 175 ("STATE: Did she acknowledge that it was painful or that there was an injury? WITNESS: Yes."). Chief Carroll, who saw Melisse flinch when Kennedy kicked her, said that Melisse's shin was beginning to swell, it was red, and the skin was coming off like a rug burn. *Id.* at 59. This evidence is sufficient to prove that Melisse suffered bodily injury when Kennedy kicked her. Kennedy's other arguments, including that Melisse testified at trial that he did not cause her any pain or injury, are merely invitations to reweigh the evidence. We therefore affirm Kennedy's conviction for Class A misdemeanor domestic battery.

[21] Affirmed.

Kirsch, J., and Bradford, J., concur.