# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1354

GREGORY SCOTT JOHNSON,

*Petitioner-Appellant,*

*v.*

DANIEL MCBRIDE, Superintendent,
Maximum Control Facility,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. IP 98-963-C-Y/K—**Richard L. Young**, *Judge.*

ARGUED AUGUST 10, 2004—DECIDED AUGUST 20, 2004

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A jury convicted Gregory Scott Johnson of bludgeoning and kicking Ruby Hutslar to death during a burglary; it found that Johnson set fire to her home in an effort to conceal his crimes. The jurors found aggravating circumstances and no mitigating circumstances; they recommended that Johnson be sentenced to death. The trial judge agreed and imposed that penalty. The Supreme Court of Indiana affirmed on direct appeal, 584 N.E.2d 1092 (Ind. 1992), and rejected Johnson's collateral

attack. 693 N.E.2d 941 (Ind. 1998). That decision became final on June 26, 1998, so Johnson had until June 28, 1999, to seek federal collateral review. 28 U.S.C. §2244(d)(1). (June 26, 1999, the end of the statutory year, was a Saturday; the deadline therefore rolled forward to the following Monday.) Johnson's lawyer waited until June 25 to mail the petition to the district court, which received and filed it on June 29. Eventually the judge dismissed the petition as untimely.

Section 2244(d)(1)(A) provides that the petitioner has a year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"; this language sets the outer limit at June 28. Johnson contends that we should use §2244(d)(1)(D) instead; this subsection starts the period on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." See *Owens v. Boyd*, 235 F.3d 356 (7th Cir. 2000). The "claim" presented in this federal collateral attack is that Indiana violated the due process clause of the fourteenth amendment by withholding evidence that Paul Decker participated in the offense, something that (if true) might have enabled Johnson to reduce the degree of his own culpability. This is not a newly discovered claim; it is the *same* claim presented in state court. (On the definition of a "claim," see *Brannigan v. United States*, 249 F.3d 584 (7th Cir. 2001).) Indiana's judiciary deemed it to be a bad one because (a) Johnson did not contend in his confessions or at trial that Decker played any role in the offense; (b) even after trial no evidence has emerged that Decker partici- pated. What Johnson now contends is that the police must have suspected Decker, or they would not have sought a judicial order to obtain hair samples that they compared with hairs found at the crime scene. According to Johnson's current lawyers, the fact that the application for this order has never been disclosed to the defense means that the state is still hiding something and accordingly that the time

to file a federal collateral attack has not started to run; that won't happen, Johnson maintains, until he receives the application and thus learns why the police told the court that they wanted to test Decker's hairs.

Speculation about what the police may have thought early in their investigation is some distance from knowledge that the state had, yet concealed, material exculpatory evidence. See *United States v. Agurs*, 427 U.S. 97, 108-10 (1976); *Mahaffey v. Schomig*, 294 F.3d 907, 917 (7th Cir. 2002). Testing showed that Decker was *not* the source of the hair. This record does not suggest anything other than a painstaking investigation by the police. Johnson would have known himself whether Decker participated; his role is not something that the prosecutor could have concealed. A desire to see more information in the hope that something will turn up differs from "the factual predicate of [a] claim or claims" for purposes of §2244(d)(1)(D). The district judge therefore was right to use §2244(d)(1)(A) to identify the last day Johnson had to get a collateral attack under way.

Counsel bungled the job in two ways. First, she waited until the final business day of the statutory year. Prudent lawyers act sooner, so that Murphy's Law will not undermine a client's interests. Second, counsel used first-class mail rather than Federal Express or another service that guarantees next-business-day delivery, or (better still) sending a messenger to the courthouse to file in person. Apparently counsel believed that use of the mails would add three days to the time available. Yet Fed. R. Civ. P. 6(e) applies only to documents "served" on opposing counsel, not to documents such as complaints or notices of appeal that must be filed in court. Nothing in the Rules Governing Section 2254 Cases in the United States District Courts treats any document as "filed" before actual receipt by the district court's clerk. Johnson concedes that his lawyer erred in supposing that use of the Postal Service adds to the time available for filing a petition. What he contended in the district court, and

repeats here, is that lateness should be excused because delay was counsel's fault.

Johnson calls the argument one for "equitable tolling," which excuses delay when "despite all due diligence [the litigant] is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990), relying on *Holmberg v. Armbrecht*, 327 U.S. 392 (1946). Section 2244(d)(1)(D) codifies that doctrine, which as we have already held does not assist Johnson. Other events might justify delay, see *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999), but only if they (a) are unrelated to the tolling criteria built into §2244, and (b) show interference with a prisoner's ability to commence a collateral attack. See *Brooks v. Walls*, 279 F.3d 518, 525 (7th Cir.), rehearing denied, 301 F.3d 839 (2002). No one interfered with Johnson's ability to pursue collateral relief in a timely fashion. He wants us to treat his own lawyer as the source of interference, but lawyers are agents. Their acts (good and bad alike) are attributed to the clients they represent. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 396-97 (1993); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976); *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962); *Societé Internationale v. Rogers*, 357 U.S. 197, 212 (1958). The sixth amendment creates an exception to this principle for criminal prosecutions. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). Once trial and direct appeals have run their course, however, neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings, not even in a capital case. See *Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991); *Murray v. Giarratano*, 492 U.S. 1 (1989); 28 U.S.C. §2254(i). So it is as if Johnson himself had made the decisions that led to the delay.

*Modrowski v. Mote*, 322 F.3d 965 (7th Cir. 2003), illustrates the point. Counsel filed a collateral attack one day late, and

the prisoner insisted (just as Johnson does) that counsel's shortcomings should be treated as an excuse. Modrowski contended that his (former) lawyer experienced "a series of physical and mental ailments [that] prevented him from working on the petition and filing it on time." 322 F.3d at 966. We replied that

> attorney incapacity is equivalent to attorney negligence for equitable tolling purposes. We will not revisit our long-standing determination that petitioners bear ultimate responsibility for their filings, even if that means preparing duplicative petitions: petitioners, "whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands." *Johnson* [*v. McCaughtry*, 265 F.3d 559 (7th Cir. 2001)] at 566. Furthermore, no principled distinction exists between incapacity and negligence for equitable tolling purposes. Even if a prisoner diligently checks an attorney's references and disciplinary records, he still cannot prevent the attorney from bungling his case. Nonetheless, we hold the prisoner responsible for his attorney's bungling. Likewise, a prisoner cannot prevent his attorney from becoming incapacitated, and there is no reason, however unfortunate the result, not to hold the prisoner responsible in this type of situation, as well.

322 F.3d at 968. Johnson's situation is the result of a simple gaffe by counsel; he has less claim to extra time than Modrowski did.

Modrowski's sentence was life imprisonment; Johnson contends that prisoners under sentence of death should receive different treatment. Yet neither the text of §2244(d) nor the principle that lawyers are agents for their clients draws any distinction between capital punishment and other sanctions. The Supreme Court held in *Coleman* and

*Giarratano* that all prisoners, including those sentenced to death, are responsible for their own legal affairs on collateral attack and cannot demand a lawyer at public expense or obtain relief from the shortcomings of their counsel. In *Coleman* a prisoner's post-conviction counsel filed his notice of appeal in state court three days late; this default meant that Coleman failed to exhaust available state remedies and thus wiped out the prospects of collateral review in federal court. The Supreme Court recognized that counsel was to blame but enforced the default nonetheless, holding that there would be no special dispensations in capital proceedings.

To the extent *Fahy v. Horn*, 240 F.3d 239, 244-45 (3d Cir. 2001), suggests that attorneys' errors in handling collateral attacks against death sentences justify equitable tolling even though the identical conduct in other cases would not, it is hard to reconcile with *Coleman*, which the third circuit did not mention. We agree with *Rouse v. Lee*, 339 F.3d 238, 251 (4th Cir. 2003) (en banc)—another capital case in which counsel foolishly waited until the end to mail a petition and believed that Rule 6(e) added three days to the statutory filing deadline—that "[a]llowing consideration of the merits of time-barred claims to creep into the equitable tolling analysis lets petitioners effectively circumvent the statute of limitations because the merits of their claims will always be considered. This would enable petitioners who were in no way prevented from complying with the statute of limitations to create delay and undermine finality—two of the reasons that precipitated enactment of the AEDPA statute of limitations. [It is thus best never] to apply equitable tolling based on a factor that had nothing to do with [a] failure to file on time." It is unnecessary to add to the discussion of this subject in *Rouse*, 339 F.3d at 251-56.

Johnson enjoyed thorough consideration by the Supreme Court of Indiana on both direct appeal and collateral attack. To obtain another round of review in federal court, Johnson

had to meet the statutory criteria. He did not do so, and we are not authorized to excuse his non-compliance. The statute itself holds out one last opportunity, however: if exculpatory evidence should emerge, distinct enough to create a separate "claim," then §2244(b)(2)(B) could allow Johnson to file a successive petition. (This subsection applies when "(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*