**JOHNSON, Gregory Scott, Petitioner,**

**v.**

**STATE of Indiana, Respondent.**

No. 48S00–0505–SD–192.

Supreme Court of Indiana.

May 16, 2005.

## PUBLISHED ORDER CONCERNING SUCCESSIVE PETITION FOR POST–CONVICTION RELIEF IN CAPITAL CASE

### Introduction

A jury found Petitioner Gregory Scott Johnson guilty of murder and arson and unanimously recommended the death penalty. Those convictions and sentence were affirmed in the several proceedings that followed, and Johnson has received all of the review to which he is entitled as a matter of right. Execution of the death sentence is set for May 25, 2005, before sunrise. Johnson now requests permission to litigate issues relating to whether another person may have been an accomplice and whether lethal injection is a constitu-tional method of execution. These matters have already been decided adverse to his position. Because we conclude he has not shown a reasonable possibility that he is entitled to relief, we deny his request.

### Background

On June 23, 1985, a boy saw smoke coming out of Ruby Hutslar's house in Anderson. Firemen discovered Ms. Hutslar, age 82, on the floor a few feet inside the front door. The house was in disarray, with drawers emptied onto the floor and items scattered about. A police radio broadcast instructed officers to be on the lookout for Johnson because he was suspected of having set several fires in the area. As the firemen worked, Johnson, dirty and disheveled, was among the onlookers. Police arrested Johnson for public intoxication. Johnson later admitted breaking into Hutslar's house, taking some of her belongings, stepping on her, and starting the fire. Evidence showed a broom stick had been used to break the front door window. Hutslar's nose, cheekbone, larynx, spine and numerous ribs were fractured. Some of these areas on her body bore the impression of Johnson's shoes. Hutslar had died, not from the fire or the smoke, but from severe blunt force trauma consistent with being repeatedly hit by a broom handle and kicked.

A jury found Johnson guilty of felony murder and arson. Ind.Code §§ 35–42–1–1(2) (felony murder); 35–43–1–1(a) (arson). As the aggravating circumstance that made Johnson eligible for a death sentence, the State charged the killing had been done intentionally during an arson and burglary. I.C. § 35–50–2–9(b)(1). The jury unanimously recommended the death penalty. The Madison Superior Court followed the jury's recommendation, and sentenced Johnson to death.

■ We affirmed Johnson's convictions and sentence on direct appeal in *Johnson v. State*, 584 N.E.2d 1092 (Ind.1992), *reh'g denied*, *cert. denied*, 506 U.S. 853, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992). We affirmed the trial court's judgment denying relief in collateral state post-conviction proceedings in *Johnson v. State*, 693 N.E.2d 941 (Ind.1998), *reh'g denied*. Johnson then sought collateral review in the federal courts. The district court dismissed Johnson's petition for a writ of habeas corpus because it was filed late, *Johnson v. Parke*, IP 98–963–C–Y/G (S.D.Ind. Oct. 28, 2003) (unpublished order), which the federal appellate court affirmed in *Johnson v. McBride*, 381 F.3d 587 (7th Cir.2004), *reh'g denied*, *cert. denied*, —— U.S. ——, 125 S.Ct. 1649, —— L.Ed.2d —— (2005). Johnson has thus received all the review to which he is entitled as a matter of right.

By counsel, Johnson has now tendered a "Successive Post–Conviction Relief Petition" and other papers requesting permission to litigate additional collateral claims in state court. The State opposes his request.[1]

We have jurisdiction because Johnson is sentenced to death. *See* Ind. Appellate Rule 4(A)(1)(a). Execution of the death sentenced has been ordered for May 25, 2005, "before sunrise." *Johnson v. State*, No. 48S009305–PD–498 (Ind. April 25, 2005) (unpublished order).

### Our Post–Conviction Rules

Johnson has already availed himself of our rule that permits a person convicted of a crime in an Indiana state court one collateral review of the conviction and sentence in a post-conviction proceeding. *See* Ind. Post–Conviction Rule 1. As indicated above, he did not prevail on his collateral claims; the trial court entered judgment against him and we affirmed that judgment on appeal. *See Johnson v. State*, 693 N.E.2d 941.

■ To litigate another, or "successive," post-conviction claim, Johnson needs our permission. We will authorize the proceeding to go forward "if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief." P–C.R. 1 § 12(b). In deciding whether a petitioner has made the required showing, we consider the applicable law, the petition, materials from the petitioner's prior appeals and post-conviction proceedings (including the record, briefs and court decisions), and any other material we deem relevant. *Id.*

### Johnson's Claims

**1. The 1986 order for hair testing.** Johnson argues he is entitled to a new trial because he has recently obtained a copy of a court order concerning hair testing the prosecutor had not disclosed to him before trial. Johnson, however, has already fully litigated this claim and lost.

■ After he was arrested, Johnson said he had worn white gardening gloves while in Hutslar's house. The day after the murder, a pair of such gloves was found near the house. Police recovered two hairs from the glove. Before Johnson's trial in 1986, a trial court issued an order allowing the State to obtain hair samples from Paul Decker, a friend of

---

1. The following papers have been filed: Johnson's "Successive Post–Conviction Relief Petition" and "Amended Petition For Post–Conviction Relief," the State's "Verified Response in Opposition to Tender of Successive Petition For Post Conviction Relief," Johnson's "Petitioner's Reply to State's Verified Response in Opposition to Request For Permission to File Successive Petition For Post–Conviction Relief," and the State's "Verified State's Surrebuttal to Petitioner's Reply."

Johnson's. Decker's hair was examined at an F.B.I. laboratory with a microscope and compared to the hair found on the glove. The examiner concluded the hair on the glove had not come from Decker. The State did not provide this information to Johnson before trial.

Johnson did learn about the examination and other police investigation relating to Decker during the first post-conviction proceeding. He contended the State should have disclosed that Decker had been another suspect in Hutslar's murder. Having the information police collected about Decker before trial, Johnson contended, would have been helpful in reducing his own culpability for the crimes. Johnson generally claimed the investigation of Decker was "exculpatory evidence" that the State had been obligated to disclose to him before trial and not having the information rendered Johnson's trial unfair.

■ The post-conviction court rejected this claim and we affirmed. *See Johnson,* 693 N.E.2d at 946–48. We noted the State's affirmative duty to disclose material evidence favorable to the defendant pursuant to *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, we concluded the information the State had not disclosed was not exculpatory to Johnson.

First, Johnson admitted participating in the crimes, so any information about whether Decker was involved would have been known to Johnson before trial; he did not need the State to tell him.

Second, despite Johnson's already knowing whether Decker or anyone else had been an accomplice, Johnson waited until his convictions and sentence had been affirmed on direct appeal to make those assertions publicly. Therefore, we concluded, the State's failure to turn over information about the hair did not violate Johnson's right to exculpatory evidence, did not affect the outcome of the trial, and did not make the trial unfair. *Johnson,* 693 N.E.2d at 947–48.

■ One specific claim then, and now, was that the prosecutor had not disclosed the existence of a 1986 order permitting the taking of Decker's hair. We explicitly addressed this claim and rejected it for the reasons stated in the preceding paragraph. *See Johnson,* 693 N.E.2d at 947. By the time of Johnson's post-conviction appeal, there was no real dispute that an order allowing the State to take Decker's hair samples had been issued, although the order itself had not been located. *See id.* at 947 n. 7. The only development since then is Johnson's having located a copy of the order on microfilm in the Madison County clerk's office. But actually locating an order, the existence of which was not disputed, does not provide new a basis for relief to Johnson. We thoroughly considered the merits of this claim in the first post-conviction appeal and decided the post-conviction court had been correct in denying relief.

■ The doctrine of *res judicata* prevents the repetitious litigation of claims, like Johnson's, that have already been decided. *See, e.g., Wrinkles v. State,* 776 N.E.2d 905, 908 (Ind.2002); *Daniels v. State,* 741 N.E.2d 1177, 1184 (Ind.2001). Johnson has not shown a reasonable possibility he is entitled to relief on this claim.

■ **2. Dismissal of petition for writ of habeas corpus by federal district court.** Johnson also asks that we reconsider his case because he did not receive a review on the merits in the federal courts. True, when Johnson's petition for a writ of habeas corpus was filed one day late in the

federal district court, that court dismissed the petition. The federal appellate court affirmed the dismissal, indicating there was no basis under federal law to excuse the late filing. *Johnson v. McBride,* 381 F.3d 587. Nonetheless, the Seventh Circuit discussed Johnson's claim in detail before concluding, as we have, that Johnson's locating the 1986 order is not a new claim of any sort, and that he had already litigated this claim in state courts, and had "enjoyed thorough consideration by the Supreme Court of Indiana on both direct appeal and collateral attack." *Id.* at 588, 591.

■ Despite the substantive review given him in federal court, Johnson contends we should excuse his attorney's tardiness in federal court on grounds it was "presumptively harmful." To the extent Johnson asks us to second-guess the federal court on a matter of federal procedure, we decline. To the extent Johnson argues he is entitled to further review in state court because of the conduct of his attorney in federal collateral proceedings, Johnson fails to state a cognizable claim. *See Graves v. State,* 823 N.E.2d 1193, 1195–97 (Ind.2005) (discussing the standard in the state system for reviewing counsel's performance in post-conviction proceedings).

■ **3. Request to test hair.** In his reply, Johnson requests, for the first time, permission for DNA testing of the hair found on the glove and perhaps of Decker's hair. Indiana state courts have long provided access for numerous types of expert and scientific evidence, including DNA testing, to those accused or convicted of crimes. *See Williams. v. State,* 791 N.E.2d 193, 195 (Ind.2003). Since 2003, state statutes have allowed a person convicted of murder to request forensic DNA testing. *See* I.C. § 35–38–7–1 & 5. As the person requesting the testing, Johnson must show, among other things, the evidence to be tested is material to identifying him as a perpetrator and a "reasonable probability" that he would not have been convicted or would not have received as severe a sentence if "exculpatory results" from the testing had been available before trial. I.C. §§ 35–38–7–8 & 9.

■ Johnson proposes that DNA testing should be performed on the hair in this case because DNA testing is more sophisticated than the microscopic examination performed in 1986. That may be true, but Johnson does not explain how he meets either of the two requirements stated above. He has admitted being a perpetrator: he admitted breaking into Hutslar's home, taking articles from it, "stepping on" Ms. Hutslar while she lay on the floor, and setting her house on fire. He also chose not to mention any accomplices until after he had been convicted and sentenced to death. Additional information about the hair found on the glove or about Decker's hair (if it is even available) simply would not affect Johnson's culpability for the crimes or the punishment the jury unanimously recommended. No matter the results of any DNA test, Johnson makes no argument that the results would be exculpatory.

Johnson has not shown a reasonable possibility of relief with respect to his locating the 1986 order and makes no colorable argument for DNA testing.

■ **4. Challenge to lethal injection as a method of execution.** Both the U.S. Constitution's Eighth Amendment and the Indiana Constitution's Article 1, Section 16, prohibit "cruel and unusual punishment." Indiana administers the death penalty by lethal injection. *See* I.C. § 35–38–6–1. Johnson contends this method of execution "creates an unacceptable risk of unnecessary pain and suffering" in violation of the constitutional prohibition.

We have previously rejected the claim that lethal injection is a *per se* cruel and unusual punishment. *Ritchie v. State*, 809 N.E.2d 258, 262–63 (Ind.2004); *Moore v. State*, 771 N.E.2d 46, 55–56 (Ind.2002). In *Moore*, we observed the Eighth Amendment requires an execution "be performed in a manner that avoids unnecessary or wanton infliction of pain" but concluded lethal injection does not constitute wanton infliction of pain. *Id.* at 55–56. In *Ritchie*, we discussed relevant authorities at some length and again concluded that lethal injection does not run afoul of the constitutional prohibition. *See* 809 N.E.2d at 262–63. Neither prisoner in those cases submitted any particular evidence showing an unusual risk in their individual cases. Like them, Johnson does not supply any evidence suggesting an unusual risk in his case.

Johnson's claim is more specific than those in *Ritchie* and *Moore* in that he challenges the drug protocol that he says the Department of Correction uses to administer lethal injections. Johnson sets forth in his papers the physiological effects that he says these drugs have and contends they constitute unconstitutionally cruel and unusual punishment. A number of courts have held that the same or similar drug protocol does not violate the Eighth Amendment. *See, e.g., Beardslee v. Woodford*, 395 F.3d 1064, 1076 (9th Cir. 2005), *cert. denied* —— U.S. ——, 125 S.Ct. 982, 160 L.Ed.2d 910 (2005); *Cooper v. Rimmer*, 379 F.3d 1029, 1031–33 (9th Cir. 2004); *Reid v. Johnson*, 333 F.Supp.2d 543, 552–53 (E.D.Va.2004); *State v. Webb*, 252 Conn. 128, 750 A.2d 448, 454–56 (2000), *cert. denied*, 531 U.S. 835, 121 S.Ct. 93, 148 L.Ed.2d 53 (2000); *Sims v. State*, 754 So.2d 657, 666–68 (Fla.2000), *cert. denied*, 528 U.S. 1183, 120 S.Ct. 1233, 145 L.Ed.2d 1122 (2000); *Abdur'Rahman v. Bredesen*, 2004 WL 2246227, *15–18 (Tenn.Ct.App. 2004), *permission to app. granted.* But Johnson directs us to no cases that have held such protocols violate the Eighth Amendment and we have not identified any.[2] In view of the above, we need not address the State's argument that this claim is procedurally defaulted because Johnson waited too long to raise it. Johnson has not shown a reasonable possibility that he is entitled to relief.

### Conclusion

Johnson has not met his burden of establishing a reasonable possibility that he is entitled to post-conviction relief. Accordingly, we decline to authorize the filing of a successive petition for post-conviction relief.

Execution of the sentence is set for May 25, 2005, before sunrise. Johnson has already received extensive judicial review. Therefore, any request for rehearing must be prompt. Rehearing should not be sought if Johnson intends to raise the same arguments we have already addressed, but if he does petition for rehearing, the petition must be physically filed with the Clerk no later than **noon on Wednesday, May 18, 2005.** The State's response must be physically filed with the Clerk no later than **noon on Thursday, May 19, 2005.** To minimize any delay in the service and receipt of papers, the attorneys are ordered to certify in papers presented for filing that copies have been sent by fax or electronic mail to the other party's attorney and that the other party's attorney has been informed by telephone or voice mail of the filing of the papers.

---

**2.** *But see Harris v. Johnson,* 323 F.Supp.2d 797, 809 (S.D.Tex.2004) (finding prisoner showed likelihood of success sufficient to support a temporary restraining order), *order vacated by* 376 F.3d 414 (5th Cir.2004) (concluding prisoner had unreasonably delayed bringing challenge to method of execution).

Parties shall send a courtesy copy of all filings to the Indiana Supreme Court Administration office (fax number 317/232–8372).

SHEPARD, C.J.; and DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.