# In the
# Indiana Supreme Court

| | | |
|---|---|---|
| Marvin BIEGHLER, | ) | Supreme Court Cause No. |
| Petitioner, | ) | 34S00-0511-SD-679 |
| v. | ) | |
| | ) | Howard Superior Court |
| STATE of Indiana, | ) | Case No. 2436 |
| Respondent. | ) | |

## PUBLISHED ORDER CONCERNING SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF IN CAPITAL CASE

### Introduction

Marvin Bieghler remains convicted of two murders and sentenced to death after having completed the judicial review to which he is entitled as a matter of right. After the State moved to set an execution date, Bieghler tendered papers asking permission to litigate three additional claims concerning Indiana's lethal-injection method of execution, the length of time since his conviction, and the evidence of his guilt. Because we conclude Bieghler has not shown a reasonable possibility he is entitled to relief on any of these claims, we deny his request to litigate them. A date for execution of the sentence will be set by separate order.

### Background

The victims, 21-year-old Tommy Miller and his pregnant 19-year-old wife, Kimberly, were found dead in their rural Howard County trailer by Miller's brother on the morning of December 11, 1981. Tommy Miller had been shot six times; Kimberly Miller, twice. A dime was found near each victim. Their 2-year-old child was in the trailer, but had not been shot. Bieghler was charged with two counts of intentional murder and one count of burglary. *See* Ind. Code §§ 35-42-1-1(1) (murder), 35-43-2-1 (burglary) (2004). The State sought the death penalty, alleging two aggravating circumstances that rendered Bieghler eligible for a death sentence: (1) an intentional murder during a burglary, and (2) the multiple murders. *See* I.C. §§ 35-50-2-9(b)(1), -9(b)(8) (2004).

Evidence at trial showed the following. Bieghler, a drug dealer, was effectively put out of business when someone gave information to the police leading to the arrest of an associate and the confiscation of a large amount of marijuana. Bieghler had said that if he discovered who had "dropped a dime" on him (that is, who had informed to the police), Bieghler would "blow him away." Bieghler later expressed the belief that Tommy Miller had been the informant and said he would get Miller.

Harold "Scotty" Brook, Bieghler's friend and another drug-business associate, cut a beneficial deal with the prosecutor in exchange for testifying against Bieghler. According to Brook, he and Bieghler spent the afternoon and evening of December 10th drinking alcohol and smoking marijuana. At about 10:30 that evening, the two men, along with Brook's brother, drove to Miller's trailer. Bieghler entered the trailer; Brook soon followed. Upon entering,

Brook saw Bieghler pointing his pistol into one of the rooms, although Brook testified he had not heard anything, neither gunshots nor the cry of the Millers' small child whom Brook saw standing up in his nearby crib with a crying expression on his face. Within a short time, Bieghler ran from the trailer carrying a plastic garbage bag with items from the trailer, and Brook followed. They returned to Kokomo, picked up Bieghler's girlfriend from work at about 11:15 p.m., then drove to a tavern, and later to the girlfriend's house. Bieghler was seen to be distraught, and announced he was driving to Florida. The pistol was not introduced at trial, but nine shell casings found at the murder scene matched casings found in a rural location where Bieghler was known to have fired his pistol for target practice.

Bieghler denied having been at the trailer that night, and testified he had been on his way to Florida when the murders occurred. He testified that his pistol had gone missing before the murders. Several witnesses testified about icy road conditions that might have prevented the round trip to the Miller trailer during the time Brook specified. Others testified they spoke with Tommy Miller on the phone that evening after 11:00.

After considering the conflicting evidence, the jury found Bieghler guilty as charged and unanimously recommended the death sentence. *See* I.C. § 35-50-2-9(e) (providing that a jury may recommend the death penalty only if it finds the state has proved an aggravating circumstance beyond a reasonable doubt and that any mitigating circumstances are outweighed by the aggravating circumstances). The Howard Superior Court followed the jury's recommendation and sentenced Bieghler to death.

The convictions and sentence were affirmed at each stage of subsequent review. We affirmed the death sentence on direct appeal in Bieghler v. State, 481 N.E.2d 78 (Ind. 1985), *reh'g denied*, *cert. denied*, 475 U.S. 1031 (1986). Bieghler sought collateral relief in a state trial court, but the trial court denied his post-conviction petition and we affirmed in Bieghler v. State, 690 N.E.2d 188 (Ind. 1997), *reh'g denied*, *cert. denied*, 525 U.S. 1021 (1998). Bieghler then sought relief in federal courts. The United States District Court for the Southern District of Indiana denied Bieghler's petition for a writ of habeas corpus in Bieghler v. Davis, IP 98-490-C-M/S, slip op. (S.D. Ind. July 7, 2003). The United States Court of Appeals for the Seventh Circuit affirmed in Bieghler v. McBride, 389 F.3d 701 (7th Cir. 2004), *reh'g and reh'g en banc denied* (2005), *cert. denied*, 546 U.S. ___, 126 S. Ct. 430 (Oct. 11, 2005).

Bieghler has thus received the review of the convictions and death sentence to which he is entitled as a matter of right. We have jurisdiction because he is sentenced to death. *See* Ind. Appellate Rule 4(A)(1)(a).

**Indiana's Post-Conviction Rule**

As just indicated, Bieghler has already availed himself of our rule that permits a person convicted of a crime in an Indiana state court one collateral review of a conviction and sentence in a post-conviction proceeding. *See* Ind. Post-Conviction Rule 1.

To litigate another or "successive" post-conviction claim, he needs our authorization. We will permit such a proceeding to go forward only "if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief." P-C.R. 1 § 12(b). In deciding whether Bieghler has made the required showing, we consider the applicable law, the petition,

materials from his prior appeals and post-conviction proceedings, including the record, briefs and court decisions, and any other material we deem relevant. *See id.*

By counsel, Bieghler has filed a "Memorandum In Support Of Motion For Leave To File Successive Petition For Post-Conviction Relief" and a "Form For Successive Post-Conviction Relief Rule 1 Petitions," and has tendered a "Petition For Post-Conviction Relief." The State filed its "State's Verified Response In Opposition To Motion For Permission To Proceed On A Successive Post-Conviction Relief Petition." Bieghler was allowed to file a "Reply To State's Response In Opposition To Motion For Leave To File Successive Petition For Post-Conviction Relief."

### The Claims

**1. Bieghler has not shown a reasonable possibility that Indiana's method of execution violates the federal or state constitution.** Indiana administers the death penalty by lethal injection. *See* I.C. § 35-38-6-1 (2004). Three drugs are injected in sequence: sodium pentothal, a fast-acting anesthetic intended to render the prisoner unconscious; pancuronium bromide, which stops a person's breathing; and potassium chloride, which stops a person's heart.

Bieghler's claim relates to the anesthetic. According to materials Bieghler has submitted, a person's age, gender, body weight, level of anxiety, or history of substance abuse may, in some circumstances, affect the amount of the sodium pentothal needed to produce a continued state of anesthesia. (*See* Mem. In Supp. Of Mot. For Leave To File Successive Pet. For Post-Conviction Relief (hereafter "Mem."), 2 & Exh. B (L. G. Koniaris, M.D., et al., *Inadequate Anaesthesia in Lethal Injection for Execution,* 365 *The Lancet* 1412 (Apr. 16, 2005)).) Bieghler asserts that such adjustments can be appropriately performed only by a person trained in the field of clinical anesthesiology but that Indiana's protocol does not include the assistance of a person with such training for Bieghler's execution. Therefore, he argues, Indiana's method of execution "inflicts unnecessary pain and agony" because it lacks the assurance that his execution will be "pain free." Mem. at 2, 5. This lack of guarantee for a "pain-free" execution violates several provisions in the federal and state constitutions, Bieghler concludes. (*See* Pet. for Post-Conviction Relief (hereafter "Pet.") at ¶ 8(a).)[1]

---

[1] Bieghler lists a number of constitutional provisions he claims will be violated. He cites two provisions of the U.S. Constitution: the Eighth Amendment (prohibiting cruel and unusual punishment); and the Fourteenth Amendment (guaranteeing equal protection and due process to citizens). In addition, he cites several sections in Article I of Indiana's Constitution: Section 1 (declaring in part that all people have "certain inalienable rights" including "life, liberty, and the pursuit of happiness," and "an indefeasible right to alter and reform their government"); Section 12 (providing that "courts shall be open," that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law," that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay"); Section 13 (specifying that "the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor," and that the "[v]ictims of crime . . . shall have the right to be treated with fairness, dignity, and respect"); Section 15 (specifying that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor"); Section 16 (assuring that "[c]ruel and unusual punishments shall not be inflicted" and that "[a]ll penalties shall be proportioned to the nature of the offense"); Section 18 (specifying that the "penal code shall be founded on the principles of reformation, and not of vindictive justice"); Section 23 (prohibiting the general assembly from granting "to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens"). Although Bieghler was given the opportunity to do so, his papers contain no particular

3

Bieghler cites no authority for the proposition that he is entitled to a "pain free" execution, and we have found none. *Compare* Johnson v. State, 584 N.E.2d 1092, 1107 (Ind. 1992) (fact that electrocution may not cause instantaneous and painless death does not mean that method involves the unnecessary and wanton infliction of pain).

Both the federal and state constitutions prohibit "cruel and unusual punishment." Punishment may not include torture, lingering death, or the unnecessary and wanton infliction of pain; the method must be compatible with contemporary standards of society. *See, e.g.*, Estelle v. Gamble, 429 U.S. 97, 102 (1976); *accord* Moore v. State, 771 N.E.2d 46, 55-56 (Ind. 2002). Claims that lethal injection violates the prohibition against cruel and unusual punishment have been rejected by courts throughout the county in states that appear to have a drug protocol the same as or similar to Indiana's. *See, e.g.*, Beardslee v. Woodford, 395 F.3d 1064, 1076 (9th Cir. 2005), *cert. denied*, 125 S. Ct. 982 (2005); Cooper v. Rimmer, 379 F.3d 1029, 1031-33 (9th Cir. 2004); Reid v. Johnson, 333 F. Supp.2d 543, 552-53 (E.D. Va. 2004); State v. Webb, 750 A.2d 448, 454-56 (Conn. 2000), *cert. denied*, 531 U.S. 835 (2000); Sims v. State, 754 So.2d 657, 666-68 (Fla. 2000), *cert. denied*, 528 U.S. 1183 (2000); Morrow v. State, 21 S.W.3d 819, 828 (Mo. 2000), *cert. denied* 531 U.S. 1171 (2001); Abdur'Rahman v. Bredesen, 2005 WL 2615801, *9-*12 (Tenn. Oct. 17, 2005) (noting that lethal injection is "commonly thought to be the most humane form of execution"); *see also* McConnell v. State, 102 P.2d 606, 615-17 (Nev. 2004) (the absence of a codified protocol does not render lethal injection an unconstitutional method of execution absent some showing that executions in the state have been administered in a cruel or unusual manner). *But see* Harris v. Johnson, 323 F. Supp.2d 797, 809 (S.D. Tex. 2004) (concluding prisoner showed likelihood of success sufficient to support a temporary restraining order), *vacated*, 376 F.3d 414 (5th Cir. 2004) (determining prisoner had unreasonably delayed bringing challenge to execution method).

We have previously rejected claims that lethal injection is cruel and unusual punishment. *See, e.g.,* Johnson v. State, 827 N.E.2d 547, 552-53 (Ind. 2005) (order denying permission to litigate successive post-conviction claims in capital case); Ritchie v. State, 809 N.E.2d 258, 262-63 (Ind. 2004); Moore, 771 N.E.2d at 55-56 (observing that executions must "be performed in a manner that avoids unnecessary or wanton infliction of pain" but concluding that lethal injection does not constitute wanton infliction of pain). We have also noted that "[j]udicial intervention in the details of execution methods is by its nature highly restrained." Benefiel v. State, 716 N.E.2d 906, 918 n.8 (Ind. 1999).

Bieghler has not shown a reasonable possibility of succeeding on his claim because, even if Indiana's protocol was developed without input from a person trained in clinical anesthesiology, Bieghler has not shown the protocol presents any unacceptable risk of a lingering death or the wanton infliction of pain in his case. In this respect, his claim is like the others we have rejected. *See* Johnson, 827 N.E.2d at 552-53 (rejecting challenge to the drug protocol); Ritchie, 809 N.E.2d at 262-63 (rejecting prisoner's unsupported assertion that lethal injection inflicts "unnecessary pain"); Moore, 771 N.E.2d at 55 n.3 (rejecting prisoner's unsubstantiated contention that his obesity and resulting difficulty in locating a suitable vein would present

---

argument or explanation on how execution of his death sentence violates these several constitutional provisions. We therefore do not address them individually.

difficulty in his case).  In view of this decision, we do not address the State's argument that this claim is procedurally defaulted because Bieghler waited too long to raise it.

**2.  The passage of time since Bieghler committed the murders does not render his death sentence unconstitutional.**  Bieghler was convicted of murders committed in 1981.  He claims that executing him some 24 years later violates the federal and state constitutions.  (*See* Pet. at ¶ 8; Mem. at 5-11.) [2]

As we noted in an earlier case, this has become known as a "Lackey claim" from Justice Stevens's suggestion in <u>Lackey v. Texas</u>, 514 U.S. 1045 (1995) (memorandum respecting denial of certiorari), that courts consider the merits of such claims.  *See* <u>Moore</u>, 771 N.E.2d  at 54.  We also noted Justice Thomas's subsequent observation in <u>Knight v. Florida</u>, 528 U.S. 990, 993, (1999) (Thomas, J., concurring in denial of certiorari), that Lackey claims had been rejected by the courts that have considered them.  *See* <u>Moore</u>, 771 N.E.2d  at 54 (citing cases).  Rejecting the claim that 20 years on death row constituted cruel and unusual punishment, we found persuasive the reasoning in an opinion from another state:

> [The defendant] has not claimed that the State has set up a scheme to prolong the period of his incarceration or purposely resentenced [the defendant] in order to torment him.  The delay in carrying out the sentence of death has been caused by the fact that [the defendant] has availed himself of procedures our law provides to ensure that executions are carried out only in appropriate circumstances.  That this differs from the practice at common law, where executions could be carried out on the dawn following the pronouncement of the sentence, is a consequence of our evolving standards of decency, which prompt us to provide death row inmates with ample opportunities to contest their convictions and sentences.

<u>Moore</u>, 771 N.E.2d at 54 (quoting <u>State v. Moore</u>, 256 Neb. 553, 591 N.W.2d 86, 94 (1999)).  We concluded that although a prisoner should not be penalized for pursuing review of the conviction or sentence, he also should not be able to avoid a lawful sentence by the mere passage of time, and "the value of speed should not trump the value of accuracy."  <u>Moore</u>, 771 N.E.2d  at 54-55.

The only case Bieghler cites in which the time between conviction and execution, standing alone, entitled a prisoner to relief from the sentence, is a decision of the Judicial Committee of the Privy Council of the United Kingdom, vacating certain death sentences imposed in Jamaica on grounds that the prisoners had been on death row too long.  <u>Pratt v. Attorney-General for Jamaica</u>, [1994] 2 A.C. 1 (U.K.P.C. 1993) (appeal taken from Jamaica).  However, in their judgment, the Law Lords acknowledged (although disagreed with) the "powerful argument that it cannot be inhuman or degrading to allow a defendant every opportunity to prolong his life by resort to appellate procedures however extended may be the

---

[2] Bieghler's Memorandum cites the U.S. Constitution's Eighth and Fourteenth Amendments.  His Petition adds citation to these provisions of Indiana's Constitution:  Article I, §§ 12, 15, 16, and 18, as well as Article VII, § 4 (giving this Court the "power to review all questions of law and to review and revise the sentence imposed").  His papers, however, contain no particular argument on how the passage of time violates the these constitutional provisions, and we do not address them individually.

eventual time between sentence and execution. This is the view that currently prevails in some states in United States of America . . . ." *Indeed, the time between his conviction and the approaching execution flows from his having availed himself of the appeals process. Although he is not to be penalized for pursuing judicial review, he should not be relieved from a lawful sentence merely on account of the time that passed in those ultimately unsuccessful appeals. He does not claim that the State has intentionally prolonged his incarceration; rather, execution dates were stayed at his request during the appeals process. He cites no instance on which he requested the review process be speeded up; given the nature of a death sentence, a prisoner's interest in delay is obvious. To the extent Bieghler argues the passage of time renders the death sentence an ineffective deterrent, we have previously expressed the view that resolution of this issue is a matter for the legislature. *See, e.g.,* Ritchie, 809 N.E.2d at 263. Bieghler has not shown a reasonable possibility of establishing that the passage of time renders execution of his death sentence unconstitutional.

**3. The evidence is sufficient to support the conviction and the sentence.** The jury found beyond a reasonable doubt that Bieghler committed the murders. From the jury's unanimous recommendation for a death sentence, we know the jury found the State had proved an aggravating circumstance beyond a reasonable doubt and that it outweighed the mitigating circumstances. We have previously reviewed the evidence of guilt and matters relating to the death sentence from a variety of perspectives and against various legal arguments, and found them sufficient to support the conviction and sentence. *See* Bieghler, 481 N.E.2d at 83-87, 88-89, 91-93, 96-99 (direct appeal); Bieghler, 690 N.E.2d at 191-92, 196-203 (post-conviction appeal).

Bieghler essentially asks us to review that evidence again because the evidence was conflicting and Brook, the principal witness against Bieghler, obtained a favorable deal from the prosecutor in exchange for his testimony. (*See* Mem. at 12-15; Pet. at ¶ 8(c); ¶ 9(c) at 3-5.)[3] We decline. The doctrine of *res judicata* prevents the repetitious litigation of claims, like Bieghler's, that have already been decided. *See, e.g.,* Johnson, 827 N.E.2d at 551. As we noted in our previous opinions, it is the jury's role to weigh the evidence and assess a witness's credibility. *See also* Bieghler, 389 F.3d at 707 ("[T]he jury obviously accepted Brook's testimony, warts and all, and it is not our place to second-guess that assessment.").

The time for Bieghler to have argued that the State should have a burden of proof higher than "beyond a reasonable doubt" or that he is entitled to a different standard of review on appeal was at trial and on direct appeal. If an issue was known and available in an earlier proceeding but not raised, the issue is procedurally defaulted as a basis for relief in subsequent proceedings. *See, e.g.,* Matheney v. State, 834 N.E.2d 658, 662 (Ind. 2005) (order denying successive post-conviction claims in capital case). Bieghler's claim is procedurally defaulted now, and he cites no new evidence discovered since his last appeal. Similarly, to the extent Bieghler asserts a claim he describes as "the possibility that he is innocent," or alludes to the concept of "residual

---

[3] Bieghler's Petition cites the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 1, 12, 13, 15, 16, 18 and 23 of the Indiana Constitution, but again, he makes no particular argument with respect to them. Therefore, we do not address them individually.

doubt," such claims are either barred by the doctrine of *res judicata* or procedurally defaulted. Bieghler has not shown a reasonable possibility that the evidence in this case entitles him to post-conviction relief.

## Conclusion

Because Bieghler has not met his burden of establishing a reasonable possibility that he is entitled to post-conviction relief, we decline to authorize the filing of a successive petition for post-conviction relief. A date for execution of the death sentence will be set by separate order.

The Clerk is directed to counsel of record and to West Group for publication in the bound volumes of this Court's decisions.

Done at Indianapolis, Indiana, this 28th day of December, 2005.

/s/Brent Dickson
Acting Chief Justice of Indiana

Shepard, C.J., and Dickson, Sullivan, Boehm, and Rucker, JJ., concur.